Argued March 20, affirmed in part, reversed in part and
remanded for new trial May 5, reconsideration denied
June 11, petition for review denied August 6, 1975

# STATE OF OREGON, *Respondent, v.* GERALD DUANE SMITH (No. 5732), *Appellant.*

534 P2d 1180

*John K. Hoover,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the briefs was Gary D. Babcock, Public Defender, Salem.

*Timothy Wood,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

FOLEY, J.

Defendant appeals from convictions, after a jury trial, on charges of attempted murder and assault in the second degree. ORS 163.115, 163.175. Defend-

ant was granted a judgment of acquittal by the court on charges of criminal activity in drugs, ORS 167.207, and was found not guilty of an additional charge of attempted murder. Defendant was sentenced to a term of imprisonment not to exceed 10 years on the attempted murder conviction and not to exceed five years on the assault conviction, the terms to run concurrently.

On June 24, 1974, Pendleton police officers were dispatched to the scene of a "possible injury accident." A Volkswagen automobile which belonged to defendant was on its side, partially on the street and partially on the sidewalk. There was nobody in the vehicle. Shortly before police arrived Daniel Swanson, a friend of defendant, had come upon the accident scene and saw defendant crawling out of the vehicle. Defendant, who appeared "pretty shook up" and did not recognize Swanson, headed toward defendant's nearby home. Swanson had followed defendant, urging him not to leave the scene of an accident. He opened defendant's door and saw defendant holding a pistol. A shot was fired, but Swanson did not see where the shot went and could not recall whether the shot occurred before or after he closed the door. Swanson ran back to the scene of the accident where he related the preceding events to police officers who had arrived at the scene.

At about this time, defendant came out, and, in the words of one police officer, "fired a shot and was waving his arms and hollering about come and get him, and, 'Shoot me,' and things like this." Another officer, Sgt. John Christensen, crouched in a defensive position behind his police car about 230 feet away from defendant. Several more shots were fired by defendant; it appears that two were fired in the air, one struck Sgt. Christensen's vehicle, and two struck a trailer house which was about 560 feet away

but was in the same direction from defendant as Sgt. Christensen's vehicle. Defendant continued to shout as these shots were fired.

Defendant soon dropped the pistol, which still had two unfired .22 caliber cartridges in it, but he continued to fend off officers with a knife. Deputy Cadet Frederick Eastlick managed to grab defendant when defendant's attention was distracted by another officer. As Cadet Eastlick and defendant fell to the ground, Eastlick was slashed in the leg with the knife. As Eastlick described the scene:

> "I could feel him going down, he was jerking [the knife], and then we hit the ground, and I would feel his arms moving, and he was making stabs at my leg."

Defendant's conviction for assault was based on the stabbing of Cadet Eastlick; the conviction for attempted murder was based on the alleged attempt to cause the death of Sgt. Christensen.

■ Defendant first assigns as error the giving of a jury instruction which stated, *inter alia,* that defendant could be found guilty if the jury found

> "* * * that the defendant did intentionally *attempt* to cause the death of John P. Christensen, *or* that the defendant did intentionally engage in conduct which recklessly placed the life of John P. Christensen in danger under circumstances manifesting an extreme indifference to the value of human life." (Emphasis supplied.)

Defendant excepted to the giving of the foregoing instruction. Although the state contends that the defendant did not preserve the issue for appeal because he did not inform the court of his reasons for excepting to the instruction, we note that defendant also excepted, at the same time, to the failure to give *his* requested instruction on attempted murder, which was

limited to an attempt to commit an intentional murder. While somewhat ambiguous, we hold that this sufficiently apprised the court of the defendant's position.

The issue, then, is whether the court properly instructed on "attempted reckless murder," i.e., whether one can "attempt" to commit reckless murder. Criminal homicide, ORS 163.005, constitutes murder when it is committed intentionally, when it is committed as part of the commission of certain felonies, and when it "is committed recklessly under circumstances manifesting extreme indifference to the value of human life * * *." (Hereafter referred to as "reckless murder.") ORS 163.115. When it is committed recklessly, but not under circumstances manifesting extreme indifference to the value of human life, criminal homicide constitutes manslaughter. ORS 163.125.

ORS 161.085(9) defines "recklessly":

" 'Recklessly,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

ORS 161.405(1) defines "attempt":

"A person is guilty of an attempt to commit a crime when he intentionally engages in conduct which constitutes a substantial step toward commission of the crime."

Further, ORS 161.085(7) defines "intentionally":

" 'Intentionally' or 'with intent,' when used with respect to a result or to conduct described by a statute defining an offense, means that a person

acts with a conscious objective to cause the result or to engage in the conduct so described."

The state argues that defendant could attempt reckless murder so long as he intended to engage in reckless *conduct* manifesting an extreme indifference to the value of human life.

We need not, however, decide upon the general application of the attempt statute for there is ample legislative history to assist us in determining the narrower question of whether one can "attempt" a crime involving an element of recklessness.

ORS 163.195 provides:

"(1) A person commits the crime of recklessly endangering another person if he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person.

"(2) Recklessly endangering another person is a Class A misdemeanor."

We quote at length from the Commentary to this provision of the Criminal Law Revision Commission (Commission) because it is in point:

"This section creates a new offense known as recklessly endangering another person. This offense is designed to prohibit reckless conduct which places another person in danger of serious bodily harm. The statute covers potential risks as well as cases where a specific person is within the zone of danger.

"In the area of offenses involving danger to the person, there are three areas where reckless conduct is made criminal:

"(1) If it causes death it is manslaughter.

"(2) If it causes injury it is assault.

"(3) If it causes neither death nor injury it is recklessly endangering another person.

"This may be illustrated by the following ex-

ample: X, without any specific intent to injure or kill recklessly, shoots into a crowd. If death results, the crime is murder;[©] if injury results, the crime is assault; if neither death nor injury results, the crime is recklessly endangering another person.

"An unsuccessful attempt to cause intended physical injury is an attempted assault. Reckless conduct which is likely to cause physical injury, but does not do so, does not constitute attempted assault for *one cannot attempt to act recklessly*. There must be intent or knowledge before there can be an attempt. As an example, if X recklessly throws a rock through the window of a house without knowing or caring whether anyone is within, he is guilty of assault if anyone is injured, but if no one is injured, he is not guilty of attempted assault but he is guilty of recklessly endangering another person." (Emphasis supplied.) Commentary, Proposed Oregon Criminal Code (hereinafter "Commentary") 97 (1970).

The state argues that the "recklessly endangering" statute, and the Commentary thereon, includes only situations which, if death results, would constitute manslaughter. The state concludes that "the legislature did not intend the more serious conduct to go unpunished but intended the conduct to be included within the statutory concept of attempt."

We do not agree. First, the state apparently overlooks the Comment, above, that "[i]f death results" from shooting in a crowd, "the crime is murder." Additionally, the entire statutory scheme must be considered. The revisions to the criminal code

---

① The Commentary is imprecise in this discussion in that it ignores the distinction between the type of reckless conduct which, if death results, constitutes manslaughter, and the more aggravated form of reckless conduct which, if death results, constitutes murder. *See* our discussion of these differences in the body of this opinion.

provide for three degrees of assault offenses. ORS 163.165, 163.175, 163.185.[2] When the assault statutes are read along with the murder, manslaughter, and recklessly endangering statutes, ORS 163.115, 163.125, 163.195, as well as various other statutes dealing with offenses against persons in ORS ch 163,[3] it is evident that three considerations are often present: the type of culpable mental state,[4] the means used by the offender, and the injury which results.

In the Commentary to the murder statute, ORS

[2] ORS 163.165 provides:

"(1) A person commits the crime of assault in the third degree if he:

"(a) Intentionally, knowingly or *recklessly causes physical injury* to another; or

"(b) With criminal negligence causes physical injury to another by means of a deadly weapon.

"(2) Assault in the third degree is a Class A misdemeanor." (Emphasis supplied.)

ORS 163.175 provides:

"(1) A person commits the crime of assault in the second degree if he:

"(a) Intentionally or knowingly causes serious physical injury to another; or

"(b) Intentionally or knowingly causes physical injury to another by means of a deadly or dangerous weapon; or

"(c) *Recklessly causes serious physical injury* to another *by means of a deadly or dangerous weapon.*

"(2) Assault in the second degree is a Class C felony." (Emphasis supplied.)

ORS 163.185 provides:

"(1) A person commits the crime of assault in the first degree if he intentionally, knowingly or *recklessly causes serious physical injury* to another *under circumstances manifesting extreme indifference to the value of human life.*

"(2) Assault in the first degree is a Class B felony." (Emphasis supplied.)

[3] *See, e.g.,* ORS 163.145 (criminally negligent homicide), ORS 163.190 (menacing), ORS 163.200 and 163.205 (criminal mistreatment).

[4] ORS 161.085(6) defines "culpable mental state" as meaning "intentionally, knowingly, recklessly or with criminal negligence" as the terms are further defined within that section.

163.115, the Commission clearly considered that a reckless shooting, where death resulted, could constitute either murder or manslaughter. Referring to a reckless killing, the Commission notes:

"* * * The draft section is meant to cover situations such as one shooting into a crowd or any occupied house or automobile. Where a jury is convinced that the reckless act is not one showing extreme indifference to human life, it can find the accused guilty of manslaughter * * *." Commentary at 87.

In discussing the manslaughter provision, the Commission notes:

"Suppose instead that the accused has a disagreement with the victim and pushes the victim through a screen door. The victim cuts his finger slightly on the screen, contracts tetanus and dies. The act is clearly unlawful but the results can hardly be anticipated — the nature of the act is not very dangerous within the understanding of the reasonable man. * * * The draft section would ask * * * was the act of the accused so reckless as to create a substantial and unjustifiable homicidal risk. * * *" Commentary at 90.

The assault statutes reflect, in their varying degrees, different levels of culpable mental states as combined with the means utilized and the injury which results. One recklessly causing "physical injury" to another commits assault in the third degree. One recklessly causing "serious physical injury * * * by means of a deadly or dangerous weapon" commits assault in the second degree. One recklessly causing "serious physical injury * * * under circumstances manifesting extreme indifference to the value of human life" commits assault in the first degree. *See* n 2, supra. *See also* the Commentary to §§ 92, 93 and 94 at 94.

■ We conclude that the legislative scheme, as a

whole, is complete and consistent with the approach that "one cannot attempt to act recklessly," as the Commission stated in its Commentary to the recklessly endangering statute, supra.

In the context of the present case, we cannot tell whether the jury's verdict found that defendant fired in Sgt. Christensen's direction with the *intent* to kill the sergeant, which would constitute attempted murder, or found defendant guilty on a theory of attempting to recklessly murder the sergeant. Such doubts must be resolved in defendant's favor. Thus we must assume that the jury found him guilty of "attempted reckless murder." Since no individual was injured as a result of defendant's act, the only crime, based on a culpable mental state of recklessness, which may have occurred was recklessly endangering another person. ORS 163.195. It therefore was error to instruct the jury on the theory of attempted reckless murder, and we cannot conclude that such an error was harmless. The attempted murder conviction must be reversed.[9]

Defendant also contends that the trial court erred in denying a motion for a directed verdict and for a new trial as to the attempted murder and assault charges. Essentially, defendant's position is that defendant had met his burden of raising an affirmative defense of mental disease or defect by a preponderance of the evidence, ORS 161.305 and 161.055(2), and that, since the state allegedly failed to present

---

[9] *State v. Draves*, 18 Or App 248, 524 P2d 1225, Sup Ct *review denied* (1974), is not inconsistent with this opinion. *Draves* involved a murder conviction based on the alternative theories of intent or recklessness under circumstances manifesting extreme indifference to the value of human life. The crucial distinction is that in *Draves* death actually occurred, and, as we have noted, the injury resulting from an act was one of the major considerations in defining the existence and degree of an offense against persons.

any evidence to rebut defendant's proof of mental disease or defect, the court should have ruled that, as a matter of law, defendant had sustained his burden.

■ It is true, as defendant contends, that "evidence of insanity can be so substantial that the matter should be withdrawn from the trier of fact and decided favorably to the defendant by the trial judge as a matter of law." *State v. Sands,* 10 Or App 438, 439-40, 499 P2d 821 (1972). It is also true that there was significant evidence tending to show defendant was acting irrationally; several witnesses testified that he did not appear normal, and that he appeared to be under the influence of drugs; defendant had slashed his wrists; and it developed at trial that he had lost his job and had had difficulties with a girl friend just prior to the incident. However, there was other testimony that defendant was responding rationally to the situations surrounding him and that "* * * he knew what he was doing. He recognized people around him." Defendant's expert witnesses testified as to his allegation that he suffered from a mental disease or defect or an emotional disturbance at the time of the events in issue; at least two of them thought defendant could form some amount of intent. We think that this was "a close question" in which "reasonable men could differ on defendant's mental state," as it was in *State v. Sands,* supra, and we therefore conclude that the issue was properly left to the jury.

The conviction for assault in the second degree is affirmed; the conviction for attempted murder is reversed and that case remanded for new trial. ORS 19.130(1).

Affirmed in part, reversed in part and remanded for a new trial.