Argued May 21, affirmed June 23, 1975

PORTER ET AL, *Appellants, v.* RIVERDALE
SCHOOL DISTRICT #51 JT ET AL (No. 398-934),
*Respondents.*

536 P2d 1265

*Alan H. Johansen,* Portland, argued the cause for appellants. With him on the brief were Whipple, Johansen & McClain and Stewart M. Whipple, Portland.

No appearance by respondents.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

LANGTRY, J.

This is a writ of review proceeding in which the plaintiffs are father and his minor son. The petition alleges that the father requested that his son Lendon (they are residents and homeowners in the School District) have his tuition paid by the defendant District to attend Milwaukie High School, that there was good reason therefor, and that the defendant Board refused the request. The plaintiffs asked for a writ of review of the Board action. The writ was issued and the record was reviewed before the circuit court which affirmed the action of the Board. In this appeal the defendants have made no appearance. The petition for the writ refers only to the Board's refusal to pay tuition for Lendon, but the plaintiffs claim in their

brief that they are entitled to a judgment directing the School Board to reimburse for Lendon's tuition for the year 1973-74, to reimburse for an older son's, Scott, tuition at Milwaukie High School for the year 1974-75 along with that of Lendon and to pay transportation for both boys from their home to Milwaukie High School for the years 1973-74 and 1974-75.

The scope of plaintiffs' petition does not justify the judgment they ask. "* * * We must * * * look to the petition for the ascertainment of the matters which it is sought to have reviewed * * *." *School District v. Irwin*, 34 Or 431, 437, 56 P 413 (1899). However, inasmuch as the request made to the Board and the Board's action relate to both boys, we necessarily will relate the facts with reference to both as the record discloses them to us.

On April 24, 1973 Dr. Porter, the father, made a request of Riverdale School District #51 JT (which does not operate a high school) to pay tuition for his two sons at Milwaukie High School rather than at Lake Oswego High School with which Riverdale School District had a contract pursuant to ORS 339.125, quoted infra, for education of its high-school-age students. In his request he said:

"* * * * *

"As my [six] children moved into the Lake Oswego High School system, the frequency and seriousness of behavorial and social problems increased down the ladder of the sibship. The matter reached such extremes last year that I thought it best to move from the community. One son was forced to withdraw or be expelled and the other son enrolled virtually failed all subjects. Three of my five children who were enrolled at Lake Oswego received psychological counsel prior to our departure in the Fall. Since taking residence here in Friday Harbor, two of the former Lake Oswego enrollees, our young-

est, my wife and I all have been receiving assistance from the County Mental Health Clinic.

"As we contemplate our return, we do not think it would be in our children's best interests to return to the Lake Oswego School system. The psychiatric-social worker with whom we have worked these past five months also has expressed similar feelings.

"\* \* \* \* \*."

This request commenced a course of communications and discussions between the Board and Dr. Porter which lasted over a period of six months and culminated in this writ of review proceeding. In Footnote 1 we set forth the course of these proceedings as briefly as we can, compatible with understanding of them.①

---

① April 24, 1973—The first request by letter was made. It included the two paragraphs quoted in text.

May 8, 1973—The Board rejected the request.

June 6, 1973—Plaintiffs requested reconsideration, pointing out among other things that tuition was not as much at Milwaukie as at Lake Oswego, and that plaintiffs would pay for transportation.

June 12, 1973 Board meeting—These reasons were given by the Board for the previous denial:

"Riverdale district has a contractual arrangement with Lake Oswego School District to provide high school instruction to those high school students who reside in the Riverdale attendance area.

"Riverdale district also has a contract with Dunthorpe Motor Transport to provide transportation between the Riverdale area and Lake Oswego High School.

"Any change in this arrangement would involve immense problems in the areas of budget planning and contract management if an exception were made as asked by Dr. Porter.

"The Board therefore declines to make any exception to the existing arrangements which provides for Riverdale high school students to attend Lake Oswego High School only."

But the Board decided to reconsider if more information was furnished—and part thereof was a desire to know about Lake Oswego District's reaction if the request were granted.

August 17, 1973—Psychologist sent a confidential evaluation of the older boy Scott.

In their brief plaintiffs contend that the trial court erred first in finding the Board's final decision was

September 5, 1973—Superintendent of schools for Lake Oswego wrote Board saying it had no objection to the two boys going elsewhere, but said:

"* * * If many such exceptions were to be granted in the future we would certainly need to examine our tuition agreement * * *."

September 5, 1973—Letter from Dr. Porter asked for reconsideration in light of the letters from Lake Oswego and the psychologist. The two boys were then registered in and attending Milwaukie High School.

September 11, 1973 Board meeting—One Board member said the kids were getting "lost" in the proceedings, another said granting the request might set an "undesirable precedent."

In executive session the Board concluded good reason had been shown for Scott to attend Milwaukie but not "equally compelling reasons" for Lendon. Tuition for Scott was allowed, and father was to pay transportation.

September 28, 1973—Letter from Dr. Porter to Dr. Guy, chairman of Riverdale School Board, resubmitted request for Lendon's tuition, citing statutes and asserting Board was required to allow request.

October 8, 1973—Written legal opinion to School Board from its attorneys informed the Board that it had acted in conformance with the law in the matter:

"* * * * *

"We do not accept the contention set forth in Dr. Porter's letter of September 28, 1973 to the effect the district must pay the tuition costs at any high school attended by a resident student. Such a literal interpretation of ORS 335.090 removes all discretion from the board and would render it virtually impossible for the board to satisfy its basic responsibility of providing a high school educational opportunity for all of its student residents. In our opinion the board must weigh the request of an individual against the needs and requirements of the district to provide a high school education for all resident students. Thus we believe the board may properly decline to pay tuition to a high school other than Lake Oswego, if the board finds such action would be detrimentla [sic] to the contractual arrangement now existing between the district and Lake Oswego.

"* * * * *."

October 9, 1973 Board meeting—Board reiterated that it authorized tuition for one only at Milwaukie High School.

not supported by substantial evidence and second in reviewing the Board's decision by improper standards.

■ With reference to the second claimed error we are satisfied, inasmuch as the Board's final decision was in November 1973, that the standard for consideration by a court of the Board's action was that set out in ORS 34.040, as amended by Oregon Laws 1973, ch 561, effective on October 5, 1973. The pertinent part is:

"The writ shall be allowed in all cases where the inferior court, officer, or tribunal * * * in the exercise of judicial or quasi-judicial functions appears to have:

"* * * * *

"(3) Made a finding or order not supported by reliable, probative and substantial evidence; or

"(4) Improperly construed the applicable law."

In its judgment the trial court stated that it was satisfied "the Board did not engage in any arbitrary words or practices but carefully considered the concerns of the student in good faith * * *." If this statement reflects use of the standard of arbitrariness by which courts reviewed administrative actions in writ of review proceedings prior to the 1973 amendment, it arguably would be wrong. Regardless, the

---

November 2, 1973—Letter from psychologist recommended Lendon "be allowed to attend another school * * * especially one he had a part in choosing."

November 13, 1973 Board meeting—Reflects long discussion between the Board and Dr. Porter about Lendon—that a major change in policy had been made for Scott because of his special problems, but that the evidence had not convinced the Board there was sufficient reason, as against District policy, to do the same for Lendon.

December 5, 1973—Demand made from Porter's attorneys for reconsideration, with the alternative to be a judicial review.

December 11, 1973—Demand rejected.

January 18, 1974—Petition for writ of review filed.

Board's action must be "supported by reliable, probative and substantial evidence" in the record and that is the standard by which we review the matter.

ORS 335.090 provides:

"(1) The high school education of all children of school age resident within a school district which does not operate a high school * * * shall be the responsibility of the district.

"(2) The district shall pay the tuition of all pupils resident within the district who are qualified to attend and are attending a standard public high school either within or outside the state.

"(3) The district shall furnish transportation to the nearest standard public high school which pupils may attend. * * * If the district arranges for the attendance of pupils at a standard public high school other than the nearest one pupils may attend, then the district may provide transportation to the standard public high school which the pupils are attending.

"* * * * * *"

In essence, the plaintiffs contend that the wording of Subsection (2) above is such it means that if the district does not operate a high school then the district is required to pay the tuition of its resident high school students who are attending a standard public high school anywhere else. In other words, plaintiffs seem to contend that Dr. Porter and his son may choose the standard high school which the son attends and that the school district must pay the tuition bill. Other parts of their argument, however, indicate that they concede the District Board has some discretion in the matter. Our interpretation of the statute is that, at least, if the Board makes a contract with another district for its high school students' attendance, the Board may decide to which district it will pay tuition for its resident students, if the discretion is exercised rea-

sonably. It would be an absurd result to conclude that the legislature intended to allow students and their parents in this situation to impose a variety of places to which they could go and a variety of prices which the districts must pay. There is nothing in *Rysdam v. School District No. 67*, 154 Or 347, 58 P2d 614 (1936), relied upon by plaintiffs, that indicates any construction inconsistent with that which we place upon the statute.

Moreover, ORS 335.090 was amended and reenacted into its present form as Oregon Laws 1965, ch 100, § 212. Chapter 100 was a rewriting and revamping of the common school laws of Oregon. Section 286 of the same chapter (100), now ORS 339.125, provided and still provides:

"(1) The district school board may contract with the district school board of any other district for the admission of pupils in schools of the other district. * * * Expense incurred shall be paid out of the school funds of the district sending the pupils * * *.

"* * * * *."

These sections of the same Act should be read *in pari materia*. The legislature in ORS 339.125 contemplated the kind of contract the Riverdale District had made with the Lake Oswego District. That being so, it would be violative of legislature intent to allow such contracts to be nullified by interpreting ORS 335.-090(2) to authorize parents and students to choose any standard school they wish, with resultant chaos in supervision, planning and finance.

■■ Inasmuch as the plaintiffs were proposing to the Board a particular and different from usual place where Lendon should attend school, the burden of proof before the School Board was upon them.

"The customary common law rule that the mov-

ing party has the burden of proof—including not only the burden of going forward but also the burden of persuasion—is generally observed in administrative hearings * * *." McCormick, Evidence 853, § 355 (hornbook series, 2d ed 1972). The decision of the Board may not be disturbed by this court if it is based upon reliable, probative and substantial evidence in the record and upon a proper construction of the applicable law. ORS 34.040.

■ The review of the record which we have detailed in Footnote 1 convinces us that there was substantial evidence supporting the Board's ultimate decision. The minutes of the Board meetings where the matter was repeatedly considered show that Board members more than once expressed concern about the precedent they would be setting if the district paid tuition for students to districts other than Lake Oswego District with which it had a contract for the education of its high school students. It provided transportation with one bus company to take its students to Lake Oswego. There was a basis for the concern expressed, for, as we have related in the footnote, the superintendent of the Lake Oswego District on September 5, 1973 in a letter prompted by the plaintiffs' contact with him said, "* * * If many such exceptions were to be granted in the future we would certainly need to examine our tuition agreement * * *."

The Board faced a necessity of having an arrangement with a receptive school district for the education of all its high school students. The evidence plaintiffs produced demonstrated that if exceptions for individual cases were not carefully guarded and limited its arrangements for all its students could become imperiled. This alone was substantial evidence for the Board's decision.

■ Further, where the one asking affirmative relief

from an administrative agency which is exercising general authority produces evidence from which conclusions pro and con by the agency are supported, it is generally held that that part of the evidence which carries persuasion with the agency has substance. *See* discussion in *Pacific N.W. Bell v. Sabin,* 21 Or App 200, 534 P2d 984 (1975).

Plaintiffs contend in their petition for the writ that transportation costs should have been provided for Lendon's attendance at Milwaukie High School. We have held the Board's action in refusing to pay tuition for Lendon was valid. Therefore, there is no question to decide concerning transportation costs for him. Plaintiffs' attempts by brief in this court to enlarge the issues to include payment of transportation for Scott cannot be favorably received. *School District v. Irwin,* supra. However, we note that if the question were before us we would be called upon to construe ORS 335.090(3). That subsection provides the district *shall* furnish transportation to the nearest standard public high school which pupils may attend and if the district arranges for attendance at one other than the nearest the district *may* provide for transportation to that one. Our search of the record before us does not disclose whether Milwaukie High School or Lake Oswego High School is closer to School District #51 JT. Without a record to review with reference to the distances involved, we must assume the Board obeyed the law and if discretion were involved it properly exercised the same. ORS 41.360(33) ; *Heuel v. Wallowa County,* 76 Or 354, 149 P 77 (1915).

Affirmed.

SCHWAB, C. J., concurring.

I agree with the majority that the defendant school district discharged its obligation under ORS 335.090(2) to "pay tuition" by making a contract, pur-

suant to ORS 339.125(1), with a school district that does operate a high school, and that therefore, contrary to plaintiffs' contention, ORS 335.090(2) does not impose an absolute obligation on the defendant school board to "pay tuition" for Lendon's attendance at high schools other than the one under contract with the defendant district.

The factual issue in the case at bar arises under a written policy of the defendant school district governing paying high school students' tuition at schools other than Lake Oswego:

"* * * [C]ircumstances and conditions may arise wherein students may not be able to receive the specific kind and variety of educational experience and/or program related to their special needs. Said needs do not include those related to vocational or professional training, but to types of programs related to exceptional children whose individual characteristics require special academic and/or social instruction * * *."

In other words, although not legally obligated to do so, the school district has retained authority in individual cases to send high school age students to schools other than Lake Oswego. Plaintiffs contend the decision not to extend this policy to Lendon is "not supported by reliable, probative and substantial evidence," ORS 34.040(3).

I am of the belief that the defendant district's decision that there was no demonstrated educational need for Lendon to attend Milwaukie High School can be supported on a basis additional to the one discussed in the majority opinion.

Plaintiffs point out that there is uncontradicted evidence from a variety of experts, psychologists, social workers, etc., that all favors Scott's and Lendon's attending a high school other than Lake Oswego. The

evidence's being substantially the same, plaintiffs complain about the inconsistency of a decision to pay Scott's tuition elsewhere, but not Lendon's.

Plaintiffs assume that the school board had to accept, in the absence of contrary evidence, the opinions of the experts. The law is to the contrary; the board, as trier of the facts, did not have to believe even uncontradicted expert evidence. *State v. Sands,* 10 Or App 438, 499 P2d 821, Sup Ct *review denied* (1972). As for the supposed inconsistency, I note that the opinions of the experts in Scott's case were based on his actual experiences while attending Lake Oswego, whereas Lendon had not yet attended any high school and the opinions of the experts were based only on predictions about what his experiences might be. This is a sufficient basis for the school board to distinguish between the two brothers, concluding there was not a "demonstrated educational need" to pay Lendon's tuition at Milwaukie High School.