456 A.2d 171

**COMMONWEALTH of Pennsylvania**

v.

**Jessie James GRIFFIN, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 8, 1981.

Filed Jan. 28, 1983.

Petition for Allowance of Appeal Denied May 16, 1983.

40

42

Vincent J. Quinn, Assistant Public Defender, Lancaster, for appellant.

Michael Ranck, District Attorney, Lancaster, for Commonwealth, appellee.

Before CAVANAUGH, McEWEN and BECK, JJ.

CAVANAUGH, Judge:

Appellant Jessie James Griffin was tried by a jury and convicted of robbery, conspiracy, attempted murder, terror-

istic threats and simple assault. The charges arose out of an incident which took place at a branch office of the National Central Bank located in Bridgeport, Pennsylvania. Following the denial of post-verdict motions, appellant was sentenced to a term of imprisonment. The instant appeal was then filed. For the reasons discussed below, we now vacate the judgment of sentence on the attempted murder charge and affirm the judgment of sentence on the remaining charges.

The facts leading to appellant's arrest are as follows. At approximately 11:07 a.m. on October 9, 1979, Officer Savage of the East Lampeter Township Police Department received a call through the County Radio Network that the alarm at the National Central Bank had been activated. Officer Savage proceeded to the bank in a marked police vehicle. As he pulled up behind the bank, he encountered two black males, one of whom pointed a gun at him. Several shots were fired into the driver's side of the police cruiser. When the shooting stopped, Officer Savage reported over the county radio that two black males had shot at him and had fled the scene in an unknown direction.

Meanwhile, Troopers Ator and Harnish of the Pennsylvania State Police also proceeded to the bank in response to the alarm. As they entered a passageway between two stores which were adjacent to the bank, they observed a maroon over silver Cougar automobile exiting the plaza parking lot at a high rate of speed. The state troopers left in pursuit of this vehicle. Trooper Ator observed that there were two occupants in the car and that one, the passenger, appeared to be taking clothing off and crawling from the back to the front seat. Within moments, the officers received a radio message that there had, in fact, been a robbery and that shots had been fired. Trooper Ator then activated the sirens and flashing lights on his vehicle. The Cougar did not stop, but instead attempted to evade the police officers by entering a parking lot and turning around to emerge traveling in the opposite direction. A brief high-speed chase ensued. Within moments the officers

came upon the vehicle stalled on the median divider strip of a highway entrance ramp. One black male in the area was immediately seized and taken into custody.

Trooper Ator approached the disabled vehicle and observed green overalls, a blue bank deposit bag, and an open paper bag containing money in the car. Chief Glick of the East Lampeter Township Police Department, who had also been chasing the Cougar, had arrived on the scene by this time and informed Trooper Ator that the bank had been robbed by two black males who had fired shots at Officer Savage. At this point, Trooper Ator's attention was attracted to persons in a nearby industrial park who were pointing and yelling that the individual who was in the car had run in the direction of the industrial buildings. One observer told Trooper Ator that a person had run between a railroad boxcar and a nearby building. Another individual, who was located on top of a tank truck, told Trooper Ator that there was a person on the roof of the building. Trooper Ator then saw the appellant peering over the roof of the building, ordered him down from the roof, and placed him under arrest at about 11:20 a.m. Appellant's arrest was therefore completed within approximately fifteen minutes of the time the bank alarm was first activated.

On November 1, 1979, the District Attorney of Lancaster County filed Information Nos. 1924 and 1925 of 1979. Information No. 1924 charged appellant with robbery, attempted murder, and criminal conspiracy, while Information No. 1925 charged him with simple assault and terroristic threats. Various pre-trial motions were denied and appellant was tried by a jury in January, 1980. As stated above, he was found guilty of all five charges. Following the denial of post-verdict motions, appellant was sentenced as follows: ten to twenty years imprisonment on the robbery offense; five to ten years imprisonment for attempted murder; five to ten years imprisonment for criminal conspiracy; two and one-half to five years imprisonment for terroristic threats; and two years probation for simple assault. All the sentences were to run concurrently with

each other but consecutive to other sentences then being served by appellant. Appellant was also fined $100.00 on the robbery charge and ordered to pay the costs of prosecution on all charges.

■ Appellant raises several issues on appeal. His first claim is that the lower court erred in denying his application to quash the count charging him with terroristic threats. The information alleged that when the head teller, Katherine Hess, refused to open the vault, appellant stated to her, "I ought to kill you," and that the statement was made while appellant was kicking her and brandishing a firearm at her. According to 18 Pa.C.S.A. § 2706, a person commits the crime of terroristic threats "if he threatens to commit any crime of violence with intent to terrorize another...." Appellant admits that the information alleged sufficient facts to indicate that he uttered a statement with intent to terrorize. He contends, however, that the statement "I ought to kill you" is not, by definition, a threat. We need not look at the statement in a vacuum. Rather, we will consider the statement in light of the surrounding circumstances. *Commonwealth v. Holguin*, 254 Pa.Super. 295, 306 n. 12, 385 A.2d 1346, 1352 n. 12 (1978); *Commonwealth v. White*, 232 Pa.Super. 176, 335 A.2d 436 (1975). We feel that the statement "I ought to kill you," made during the course of a robbery by someone brandishing a gun and kicking the person to whom the statement was made, is sufficient to constitute a threat under section 2706 of the Crimes Code. Therefore, it was not error for the lower court to deny appellant's application to quash the count charging him with terroristic threats.

■ Appellant next claims that the lower court erred in denying his motion to suppress certain evidence. This claim is based on appellant's contention that his arrest was not based on probable cause and was, therefore, illegal. He alleges that an oral statement made by him in which he admitted participating in the bank robbery should be suppressed as the fruit of an illegal arrest, and that since the probable cause section of the search warrant affidavit was

based, in part, on the illegally obtained inculpatory statement, the search warrant is invalid and certain items seized pursuant to it must be suppressed.

With regard to the existence of probable cause, we have stated that:

> Probable cause to arrest exists if the facts and circumstances within the officer's knowledge have been gained by reasonably trustworthy means and are sufficient to warrant a man of reasonable caution to believe that the suspect has committed or is committing a crime. *Commonwealth v. Murray*, 437 Pa. 326, 263 A.2d 886 (1970); *Commonwealth v. Marino*, 435 Pa. 245, 255 A.2d 911 (1969), *cert. denied*, 397 U.S. 1077, 90 S.Ct. 1526, 25 L.Ed.2d 811 (1970). We are mindful that we should not assess the sufficiency of the officer's information as legal technicians examining the situation in retrospect, but rather that the concept of probable cause involves dealing with probabilities arising from the practical considerations of everyday life upon which prudent men rely. *Commonwealth v. Jones*, 457 Pa. 423, 322 A.2d 119 (1974); *Commonwealth v. Donnelly*, 233 Pa.Super. 396, 336 A.2d 632 (1975).

*Commonwealth v. Pytak*, 278 Pa.Super. 476, 483, 420 A.2d 640, 644 (1980).

We have reviewed the testimony presented at the suppression hearing, as summarized above, and we have no difficulty concluding that the facts and circumstances known to Trooper Ator at the time appellant was ordered down from the rooftop and arrested were sufficient to warrant his belief that the appellant had participated in a bank robbery. Since appellant's warrantless arrest was based on probable cause, it was not illegal, and evidence obtained as a result of the arrest was properly admitted at trial.

Appellant's next claim is that the lower court abused its discretion by permitting the attachment for joint trial of informations 1924 and 1925. Information No. 1924 charged appellant with robbery, attempted murder, and criminal

conspiracy. Information No. 1925 charged him with simple assault and terroristic threats. Since all of the charges arose out of the same criminal episode, the Commonwealth was *compelled* to consolidate the charges for trial under the holding in *Commonwealth v. Campana*, 452 Pa. 233, 304 A.2d 432 (1973), *vacated and remanded*, 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973), *on remand*, 455 Pa. 622, 314 A.2d 854 (1974), *cert. den.*, 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974). Appellant argues that the Commonwealth could not try the charges together absent the filing of a formal pre-trial motion to consolidate. Neither Pennsylvania case law nor the Pennsylvania Rules of Criminal Procedure have imposed such a requirement on the Commonwealth and we will not do so now.

■ Appellant also argues that the lower court erred by admitting certain Commonwealth exhibits into evidence over appellant's objection. The items in question are two pairs of overalls, black gloves, two green ski masks, two "Giant" supermarket bags, one of which contained money, and a blue bank bag. Appellant's objection to admission of the items on the ground that a chain of custody had not been established was overruled.

The police officer who seized the items in question from the maroon and silver Cougar involved in the robbery testified that he personally turned the items over to the officer in charge of the evidence locker and watched as the items were marked and placed in the locker. There is no question that the Commonwealth established the chain of custody up until this point. The appellant's objection to admission of the items is based on the fact that there was no testimony indicating how the items were transferred from the evidence locker to the courtroom for trial.

The admission of demonstrative evidence is a matter committed to the discretion of the trial court. *Commonwealth v. Ford*, 451 Pa. 81, 301 A.2d 856 (1973); *Commonwealth v. Pedano*, 266 Pa.Super. 461, 405 A.2d 525 (1979). Furthermore, there is no requirement that the Commonwealth establish the sanctity of its exhibits be-

yond a moral certainty. *Commonwealth v. Pedano,* supra; *Commonwealth v. Proctor,* 253 Pa.Super. 369, 385 A.2d 383 (1978). Every hypothetical possibility of tampering need not be eliminated; it is sufficient that the evidence, direct or circumstantial, establishes a *reasonable* inference that the identity and condition of the exhibit remained unimpaired until it was surrendered to the trial court. *Commonwealth v. Pedano,* supra; *Commonwealth v. Proctor,* supra; *Commonwealth v. Miller,* 234 Pa.Super. 146, 339 A.2d 573 (1975), *aff'd,* 469 Pa. 24, 364 A.2d 886 (1976). Finally, physical evidence may be properly admitted despite gaps in testimony regarding its custody. *Commonwealth v. Bolden,* 486 Pa. 383, 406 A.2d 333 (1979).

*Commonwealth v. Hudson,* 489 Pa. 620, 631–32, 414 A.2d 1381, 1387 (1980).

The circumstances in the instant case certainly support a reasonable inference that the identity and condition of the exhibits remained unimpaired, in spite of the gap in testimony regarding custody of the exhibits. This is especially true in view of the fact that the officer who seized the items from the car positively identified each of them at trial. The lower court did not, therefore, abuse its discretion in admitting the items into evidence.

Appellant next claims that the evidence was insufficient to support the verdict of the jury on the charge of simple assault. Specifically, he claims that there is insufficient evidence to prove that he caused bodily injury to Katherine Hess, the alleged victim of the assault. Mrs. Hess testified at trial that appellant kicked her, but, as appellant points out, she did not testify that she suffered any pain or discomfort as a result of this action. As we stated in *Commonwealth v. Herriott,* 265 Pa.Super. 143, 151, 401 A.2d 841, 845 (1979), "The wording of the statute expressly provides that the crime of assault includes an *attempt* to inflict bodily injury. Therefore, it is not essential to prove that the victim of an assault sustained actual injury." In the instant case, the court charged the jury that in order to

find appellant guilty, they had to find beyond a reasonable doubt: "One, that the defendant caused bodily injury to Katherine Hess. Two, that the defendant's conduct in this regard was intentional, knowing or reckless." (N.T. 207). The court neglected, in this portion of its charge, to state that an *attempt* to inflict bodily injury was sufficient to support a conviction. Appellant reasons, therefore, that the jury could not have convicted him without finding that he *actually* inflicted bodily injury, and that since the evidence does not support such a finding, the verdict of the jury must be overturned.

 We note, however, that early in its charge, the court informed the jury that count one of Information No. 1925 of 1979 averred that appellant "did unlawfully *attempt* to cause bodily injury or did intentionally, knowingly, or recklessly cause bodily injury to [Katherine Hess]" (N.T. 190) (emphasis added), and that the court later defined the crime of simple assault by stating: "[a] person is guilty of assault if he *attempts* to cause or intentionally, knowingly or recklessly causes bodily injury to another." (N.T. 191–92) (emphasis added). Reading the charge as a whole, as we must, *Commonwealth v. Brown,* 467 Pa. 512, 359 A.2d 393 (1976), we find that the jury was adequately informed as to the elements of the simple assault charge. The evidence presented at trial was sufficient to sustain a conviction on the charge.

 Appellant also claims that the lower court erred by affirming, but not reading, certain of appellant's points for charge and by refusing certain other points for charge. We have reviewed the lower court's rulings and, with the exception of two points relating to the attempted murder charge which we will address below, we detect no reversible error. The requested points for charge were either adequately and correctly covered elsewhere in the court's charge or were not relevant to the issues presented by this case. *See, Commonwealth v. Strong,* 484 Pa. 303, 312, 399 A.2d 88, 92 (1979); *Commonwealth v. Newsome,* 462 Pa. 106, 110, 337 A.2d 904, 907 (1975).

Appellant also contends that the lower court erred in instructing the jury that they could find him guilty of attempted murder if they found that he attempted to commit murder of the second or third degree. We agree.

In its instructions to the jury on the charge of attempted murder, the court first defined criminal attempt, and then proceeded to define the three degrees of murder. It defined murder of the first degree as murder committed by an intentional killing; murder of the second degree as a killing committed while the defendant was engaged as a principal or an accomplice in the perpetration of a felony; and murder of the third degree as all other kinds of murder. The court further explained that third degree murder included "any unlawful killing under circumstances or depravity of heart and a disposition of mind regardless of social duty *where no intention to kill exists or can reasonably and fully be inferred.*" (N.T. 200) (emphasis added). The court specifically instructed the jury that "the Commonwealth need not prove an attempt to commit first degree murder. It need only prove beyond a reasonable doubt an intention to commit murder of any degree." (N.T. 198). At the conclusion of the charge, appellant's counsel took specific exception to the court's charge insofar as it related to murder of the second and third degree. He argued that criminal attempt to commit murder of the second or third degree was logically improper and he requested that the court give a curative instruction to the effect that a specific intention to kill was necessary for a conviction of attempted murder. The court refused to do so.

■■■■ The question squarely presented to us is whether someone can attempt to commit murder of the second or third degree. We think not. A person commits an attempt when, *with intent to commit a specific crime,* he does any act which constitutes a substantial step toward the commission of that crime. 18 Pa.C.S.A. § 901. Murder of the second or third degree occurs where the killing of the victim is the unintentional result of a criminal act. Thus, an

attempt to commit second or third degree murder would seem to require proof that a defendant *intended* to perpetrate an *unintentional* killing—which is logically impossible. While a person who only intends to commit a felony may be guilty of second degree murder if a killing results, and a person who only intends to inflict bodily harm may be guilty of third degree murder if a killing results; it does not follow that those persons would be guilty of *attempted* murder if a killing did not occur. They would not be guilty of attempted murder because they did not *intend* to commit murder—they only intended to commit a felony or to commit bodily harm.

LaFave and Scott have explained in their treatise on criminal law why it is necessary to prove an intent to kill in order to sustain a charge of attempted murder:

> Some crimes, such as murder, are defined in terms of acts causing a particular result plus some mental state which need not be an intent to bring about that result. Thus, if A, B, and C have each taken the life of another, A acting with intent to kill, B with an intent to do serious bodily injury, and C with a reckless disregard of human life, all three are guilty of murder because the crime of murder is defined in such a way that any one of these mental states will suffice. However, if the victims do not die from their injuries, then only A is guilty of attempted murder; on a charge of attempted murder it is not sufficient to show that the defendant intended to do serious bodily harm or that he acted in reckless disregard for human life. Again, this is because intent is needed for the crime of attempt, so that attempted murder requires an intent to bring about that result described by the crime of murder (*i.e.*, the death of another).

LaFave and Scott, *Handbook on Criminal Law*, § 59 at 428–29 (1972) (footnotes omitted).

Numerous other jurisdictions have also held that an attempt to commit murder requires an intent to kill. *See, e.g., People v. Harris*, 72 Ill.2d 16, 17 Ill.Dec. 838, 377 N.E.2d 28 (1978); *People v. Hassin*, 48 App.Div.2d 705, 368 N.Y.S.2d

253 (1975); *Nobles v. Commonwealth,* 218 Va. 548, 238 S.E.2d 808 (1977); *Ramos v. Nevada,* 95 Nev. 251, 592 P.2d 950 (1979); *People v. Belton,* 105 Cal.App.3d 376, 164 Cal.Rptr. 340 (1980). *State v. Carter,* 44 Wis.2d 151, 170 N.W.2d 681 (1969); *Merritt v. Commonwealth,* 164 Va. 653, 180 S.E. 395 (1935). *Cf., State v. Smith,* 21 Or.App. 270, 534 P.2d 1180 (1975); *People v. Hernandez,* 44 Colo.App. 161, 614 P.2d 900 (1980); *Crear v. State,* Ala.Cr.App., 376 So.2d 778 (1979), *cert den.* Ala., 376 So.2d 788 (1979); *People v. Van Broussard,* 76 Cal.App.3d 193, 142 Cal.Rptr. 664 (1977); *Rhode v. State,* Ind.App., 391 N.E.2d 666 (1979); *State v. Dahlstrom,* 276 Minn. 301, 150 N.W.2d 53 (1967). *But see, Fleming v. State,* Fla., 374 So.2d 954 (1979); *White v. State,* 266 Ark. 499, 585 S.W.2d 952 (1979).

Furthermore, we note that a Subcommittee Note to the *Pennsylvania Suggested Standard Criminal Jury Instructions* suggests that an intent to kill is necessary to support a charge of attempted murder. The Subcommittee Note following the suggested jury instruction on the crime of criminal attempt states that in defining the crime which was attempted, the court should limit its definition to those aspects of the crime which are relevant to an attempt. "For example, if the charge were attempted murder, a definition of murder limited to murder by intentional killing should suffice." *Pennsylvania Suggested Standard Jury Instructions (Criminal),* 12.901 A—Criminal Attempt (1979).

 We hold that in order to convict a person of attempted murder, an intent to kill must be shown, and that a defendant charged with attempted murder is entitled to a jury instruction to that effect.[1] Because we can not say

1. The Commonwealth cites *Commonwealth v. Reese,* 237 Pa.Super. 326, 352 A.2d 143 (1975) in support of its claim that the charge in the instant case was proper. *Reese,* however, is factually distinguishable from the present case. In *Reese,* defense counsel had requested a jury instruction as to the various degrees of homicide in connection with an attempted murder charge. We held that an instruction as to the degrees of homicide would be improper. We also stated, however, that:

that the court's refusal to give such an instruction in the
instant case was harmless error, the appellant is entitled to
a new trial on the charge of attempted murder.

Appellant also claims that the lower court erred in re-
fusing to instruct the jury concerning the crime of reckless-
ly endangering another person. The instruction requested
by appellant was to the effect that if, instead of finding that
appellant intended to kill Officer Savage, they found that he
recklessly engaged in conduct which placed Officer Savage
in danger of death or serious bodily injury, then they should
find him guilty of recklessly endangering another person.

 "It is well settled that upon an indictment for a
particular crime, the defendant may be convicted of a lesser
offense included within it." *Commonwealth v. Nace,* 222
Pa.Super. 329, 330, 295 A.2d 87, 88 (1972). Recklessly
endangering another is a lesser included offense of the
crime of murder, *Commonwealth v. Musselman,* 483 Pa.
245, 396 A.2d 625 (1979), and it follows logically that it is
also a lesser included offense of attempted murder.

It is not error, however, for a judge to refuse to
instruct the jury on the lesser-included offense unless the
evidence could support a conviction on the lesser offense.
"There is no duty on a trial judge to charge upon law
which has no applicability to presented facts. *Common-
wealth v. Jordan,* 407 Pa. 575, 181 A.2d 310 (1962)."
*Commonwealth v. Dessus,* 214 Pa.Superior Ct. 347, 364,
257 A.2d 867, 875, allocatur refused, 214 Pa.Superior Ct.
XI (1969). If under the evidence at trial, the jury *must*

Murder in this Commonwealth is still governed by the Common
Law definition; i.e., the unlawful killing of another with malice
aforethought, express or implied, *Commonwealth v. Bowden,* 456
Pa. 278, 309 A.2d 714 (1973). Although murder is delineated into
murder of the first and second degrees, the Common Law definition
still governs and murder, whether it be of the first or second degree,
is nevertheless murder. Therefore, the Commonwealth in the in-
stant case was required only to prove intent to commit murder.
237 Pa.Super. at 333–34, 352 A.2d at 147. (footnote omitted). This
language is dicta and, to the extent that it implies that the malice
shown by an intent to inflict bodily injury is sufficient to support a
charge of attempted murder, we feel that it is incorrect.

either convict the accused of the greater offense or acquit him it is not error to refuse an instruction on a lesser-included offense. *Commonwealth v. Melnyczenko*, 238 Pa.Super. 203, 358 A.2d 98 (1976); *Commonwealth v. Dessus*, supra. Conversely, if it is rational for the jury to render a verdict of not guilty of the greater offense but guilty of the lesser, *it is incumbent upon the judge to instruct the jury on the law related to the constituent offense if so requested by counsel.* See *Keeble v. United States*, 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973); *Commonwealth v. Moore*, 463 Pa. 317, 323, 344 A.2d 850, 853 (1975) (Concurring opinion by ROBERTS, J.) *Commonwealth v. Melnyczenko*, supra; *Commonwealth v. Dessus*, supra. "It should be emphasized, however, that before a charge on ... [a lesser-included offense] is required, there thus must be some evidence, from whatever source, which would permit the jury to return such a verdict." *Commonwealth v. Moore*, supra [463 Pa.] 317, at 338, 344 A.2d 850, at 861 (Concurring opinion by POMEROY, J.). See also *Sansone v. United States*, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965); 23A C.J.S. *Criminal Law* § 1288 (1961).

*Commonwealth v. Wilds*, 240 Pa.Super. 278, 287–88, 362 A.2d 273, 278 (1976) (emphasis added).

 A person is guilty of recklessly endangering another person "if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. The evidence in the instant case established that appellant fired bullets at Officer Savage as he sat in a police car. If the jury found that the Commonwealth failed to prove an intent to kill, the evidence would certainly support a finding that appellant recklessly engaged in conduct which placed Officer Savage in danger of death or serious bodily injury. Thus, the lower court erred in refusing to instruct the jury on the crime of recklessly endangering another. We have already held that appellant is entitled to a new trial on the charge of attempt-

ed murder. At that trial, the court shall instruct the jury on the crime of recklessly endangering another person, if appellant requests such an instruction.

Finally, appellant claims that the sentence imposed by the lower court was manifestly excessive and an abuse of discretion. He bases this claim primarily on the fact that he received a heavier sentence than his co-conspirator did. We note, however, that appellant's co-conspirator was not tried with appellant, but rather pled guilty to the charges at a separate hearing. We recently held that the rule that a trial judge should give an explanation if he imposes different sentences on co-defendants did not apply where the co-conspirator pled guilty at a separate hearing and was sentenced by a different judge. *Commonwealth v. Craft,* 304 Pa.Super. 494, 450 A.2d 1021 (1982). *See also, Commonwealth v. Hollerbush,* 298 Pa.Super. 397, 444 A.2d 1235 (1982); *Commonwealth v. Jezorwski,* 280 Pa.Super. 178, 421 A.2d 464 (1980).

As a general rule,

> Sentencing is a matter within the sound discretion of the sentencing judge, to be exercised within the statutory guidelines and considerations. When so exercised, the sentence will not be disturbed by an appellate court unless it is so clearly excessive as to constitute an abuse of discretion.

*Commonwealth v. Hollerbush, supra,* 298 Pa.Super. at 406–407, 444 A.2d at 1240. The sentences imposed in the instant case were within the statutory limits. The record demonstrates that the sentencing court considered the guidelines of the Sentencing Code, the statements of counsel, the circumstances of the crime, the particular characteristics of appellant, and appellant's prior criminal record, which includes another robbery conviction. We conclude that the sentences imposed were neither excessive nor an abuse of discretion.

For the reasons discussed above, judgment of sentence on the charge of attempted murder is reversed and remanded

for a new trial. Judgment of sentence on the remaining charges is affirmed.