**In the Interest of J.L.**

*Mark F. Walmer, assistant district attorney,* for the Commonwealth.

*Vincent J. Quinn,* and *Gerard P. Ryan,* for juvenile.

ECKMAN, *P.J.,* March 25, 1992—Before the court are motions in arrest of judgment and for a new adjudication hearing filed by J.L., a juvenile.

At an adjudication hearing held November 27, 1991, the juvenile was found beyond a reasonable doubt to

have committed acts, which if performed by an adult, would constitute the crime of terroristic threats.[1] Timely post-adjudication motions were filed on December 6, 1991. The parties having waived oral argument before the court en banc, the motions are now before the court for disposition.

The juvenile only contends that the evidence was insufficient to sustain his adjudication of terroristic threats.

The test for determining whether the evidence presented at trial was sufficient to sustain the conviction is "whether viewing the evidence in the light most favorable to the Commonwealth as the verdict winner and drawing all reasonable inferences therefrom upon which the jury could properly have based its verdict, there is sufficient evidence to enable the trier of fact to find beyond a reasonable doubt every element of the crime of which the appellant has been convicted." *Commonwealth v. Upchurch*, 355 Pa. Super. 425, 442, 513 A.2d 995, 1003 (1986); see also *Commonwealth v. Davis*, 491 Pa. 363, 421 A.2d 179 (1980).

"Where sufficiency of the evidence is raised, all reasonable inferences arising from the evidence are drawn in favor of the verdict winner." *Commonwealth v. Elrod*, 392 Pa. Super. 274, 572 A.2d 1229 (1990) (quoting *Commonwealth v. Carter*, 329 Pa. Super. 490, 478 A.2d 1286 (1984)).

Furthermore, it is for the trier of fact to pass upon the credibility of the witnesses and the weight to be accorded the evidence, which may be sufficient to con-

---

1. The Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, *as amended,* 18 Pa.C.S. §2706.

vict even though wholly circumstantial. *Commonwealth v. Dreibelbis,* 493 Pa. 466, 426 A.2d 1111 (1981). It is within the province of the trier of fact to believe all, or a part, or none of the statements or testimony of witnesses. *Commonwealth v. Zapata,* 447 Pa. 322, 290 A.2d 114 (1972). While the Commonwealth bears the burden of proving each element of the crime beyond a reasonable doubt, *Commonwealth v. Bailey,* 322 Pa. Super. 249, 469 A.2d 604 (1983), a mere conflict of testimony does not render the evidence insufficient. *Commonwealth v. Rankin,* 441 Pa. 401, 272 A.2d 886 (1971).

Terroristic threats is defined in section 2706 of the Crimes Code, supra, as follows:

"A person is guilty of a misdemeanor of the first degree if he threatens to commit any crime of violence with intent to terrorize another or to cause evacuation of a building place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or in reckless disregard of the risk of causing such terror or inconvenience."

In *Commonwealth v. Anneski,* 362 Pa. Super. 580, 525 A.2d 373 (1987) (quoting *Commonwealth v. Ferrer,* 283 Pa. Super. 21, 23, 423 A.2d 423, 424 (1980)), the court said, "A violation of the statute is proved by evidence that (1) a threat to commit a crime of violence was made and (2) such threat was communicated with intent to terrorize."

Further, the court said, "The offense does not require that the accused intend to carry out the threat; if does require an intent to terrorize. The harm sought to be prevented is the psychological distress which follows

from an invasion of another's sense of personal security." *Commonwealth v. Anneski, supra,* (quoting *Commonwealth v. Hardwick,* 299 Pa. Super. 362, 365, 445 A.2d 796, 797 (1982)).

The Pennsylvania Superior Court found in *Commonwealth v. Hudgens,* 400 Pa. Super. 79, 582 A.2d 1352 (1990), that the victim was threatened when the defendant told the victim he would "get him," even if the appellant did not indicate that he would kill the victim. The court said, "It is unnecessary for an individual to specifically articulate the crime of violence he or she intends to commit where the type of crime may be inferred from the nature of the statement and the context and circumstances surrounding the utterance of the statement." *Commonwealth v. Hudgens, supra* at 90, 582 A.2d at 1358, (citing *Commonwealth v. White,* 232 Pa. Super. 176, 335 A.2d 436 (1975); *Commonwealth v. Ferrer, supra).*

Similarly, in *Commonwealth v. Griffin,* 310 Pa. Super. 39, 456 A.2d 171 (1983), the Pennsylvania Superior Court held that when a bank teller refused to open the bank vault during a robbery, and the defendant said, "I ought to kill you," while brandishing a gun and kicking the person to whom the statement was made, the statement was sufficient to constitute a terroristic threat. The court further said, "[w]e need not look at the statement in a vacuum. Rather, we will consider the statement in light of the surrounding circumstances." *Commonwealth v. Griffin, supra* at 45, 456 A.2d at 174. (citations omitted)

With these principles in mind, we will review the evidence adduced at the adjudicatory hearing. Brett

McCracken and James Lentz testified that they were at James' house on the evening of November 15, 1991 with another friend, Jason Brooks. They were sitting on the front porch playing games. Brett and James both testified that at approximately 9:35 p.m. four boys came to the porch where they were sitting. The juvenile opened his jacket and partially pulled out a knife from a case saying "you want some of this?" The juvenile also said, "If you tell anybody, you're gonna get some of this." Both boys testified that they took the juvenile's words to mean that if they told anyone about the juvenile's actions, the juvenile would stab them. Brett and James testified that when the juvenile showed them the knife, it frightened them.

Brett testified he was only a foot away from the juvenile when the juvenile made the statements. He described the blade of the knife as being about seven inches long, sheathed in a case, and carried on the juvenile's belt.

Brett described the juvenile as wearing a Duke hat and shirt on that evening. Brett went with the police later that same evening and positively identified the juvenile as the person who had threatened him earlier. Brett also identified the juvenile in court.

Although James had identified the juvenile at an earlier time for the police, he was unable to identify the juvenile in court as a part of the group that threatened him on November 15, 1991. However, he did describe the boy who had threatened him as wearing a Duke hat.

Detective Raymond Dimm, a juvenile detective with the Lancaster Bureau of Police, testified that on No-

vember 15, 1991, he heard radio transmissions in the police station regarding a disturbance with a knife in which juveniles were involved. Detective Dimm proceeded to the area of the disturbance with numerous uniformed police officers. A description was obtained of the person involved in the incident. The description was that of a Hispanic male, wearing a Duke cap and shirt, and white pants. A few minutes later, Detective Dimm heard radio transmissions that uniformed police officers were pursuing on foot someone fitting the description of the person involved in the incident. The individual was arrested shortly thereafter and was identified as the same juvenile.

Detective Dimm testified that although the knife was not recovered from the juvenile, it was, however, recovered in another incident that same evening.[2] Detective Dimm described the recovered knife as a fishing-type knife, with a blade about six-inches long, in a brown sheath.

Viewing the testimony in the light most favorable to the Commonwealth, we are persuaded that there is sufficient evidence to establish beyond a reasonable doubt that the juvenile committed the offense of terroristic threats. Both Brett McCracken and James Lentz testified to the same facts concerning the juvenile's conduct and threat of harm to them. Brett positively identified the juvenile out of court and in court as the same juvenile that showed them a knife and threatened to use the knife on them. Moreover, the two witnesses

---

2. Detective Dimm testified that the recovered knife was found later the same evening on an individual who was believed to have been with the juvenile earlier when the terroristic threats occurred.

were frightened, and believed the juvenile when he said he would use the knife. Hence, considering the surrounding circumstances, the two-prong test of *Commonwealth v. Anneski, supra,* was proven by the Commonwealth in that the juvenile threatened to commit a crime of violence with the intent to terrorize the two boys. *Commonwealth v. Griffin, supra.*

Accordingly, we enter the following

## ORDER

And now, March 25, 1992, for the foregoing reasons, the court denies the motions in arrest of judgment and for a new adjudication filed by the juvenile, J.L. The juvenile is directed to appear for disposition at the call of the district attorney.