705 So.2d 938 (1998)
Cedric WATKINS, Appellant,
v.
STATE of Florida, Appellee.
No. 96-3129.
District Court of Appeal of Florida, Fifth District.
January 2, 1998.
Rehearing Denied February 12, 1998.
*939 Mark E. NeJame and Joe Daniel Harrington, of Law Offices of Mark E. NeJame, P.A., Orlando, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Robin A. Compton, Assistant Attorney General, Daytona Beach, for Appellee.
GRIFFIN, Chief Judge.
The only issue raised on appeal in this case is whether the evidence is sufficient to support the jury's verdict of attempted second-degree murder. After an altercation, appellant left the scene, later returned in his car with a gun and fired several shots at the victim, striking him twiceonce in each leg. The appellant focuses solely on the testimony of the victim who, at one point in the trial, testified that it seemed to him that the defendant was aiming at the ground and the bullets were bouncing off the ground into his legs. He subsequently attempted to explain that this could not have been the case but the court evidently agreed with defense counsel that the damage to the state's attempted first-degree murder charge was irreparable. The state conceded the lack of sufficient evidence for attempted first-degree murder but urged the evidence was sufficient to support the lesser included offenses of attempted second-degree murder or aggravated battery. The defense did not object to the reduction in the charge. There is plainly sufficient evidence to support the attempted second-degree murder conviction. See, e.g., Brown v. State, 569 So.2d 1320 (Fla. 1st DCA 1990).
The question whether attempted second-degree murder survives as a recognized criminal offense in Florida, the issue on which my colleagues write, was not raised below or on appeal. Moreover, the law appears well settled that attempted second-degree murder is a crime in Florida and that it is a necessarily lesser included offense of attempted first-degree murder. Gentry v. State, 437 So.2d 1097 (Fla.1983); Holland v. State, 634 So.2d 813, 816 (Fla. 1st DCA 1994); Dicicco v. State, 496 So.2d 864, 865 (Fla. 2d DCA 1986); Williams v. State, 462 So.2d 577 (Fla. 4th DCA), review denied, 472 So.2d 1182 (Fla.1985); Morgan v. State, 417 So.2d 1027 (Fla. 3d DCA 1982), review denied, 426 So.2d 27 (Fla.1983); Littles v. State, 384 So.2d 744 (Fla. 1st DCA 1980). See Florida Std. Jury Instr. (Crim.), Schedule of Lesser Included Offenses. The difficulties that inhere in attempted second-degree murder are undeniable, if not novel. They were recognized prior to Gentry and the stated purpose of Gentry was to put them to rest.
Whether the supreme court has changed direction in Thomas v. State, 531 So.2d 708 (Fla.1988) and State v. Gray, 654 So.2d 552 (Fla.1995) thereby eliminating attempted second-degree murder and displacing Gentry is a question of some substance. Attempted felony murder and attempted second-degree murder are different, however, and the practical difficulties noted by the supreme court in applying Amlotte v. State, 456 So.2d 448 (Fla.1984) concept of attempted felony murder[1] do not appear to have arisen in light of Gentry. Manifestly, if the Florida supreme court did abolish the crime of attempted second-degree murder by its decision in Gray, it does not appear to have noticed that it did so. Standard Jury Instructions in Criminal Cases, 697 So.2d 84, 85 (Fla.1997); State v. Wilson, 680 So.2d 411 (Fla.1996); Harris v. State, 674 So.2d 110, 113 (Fla.1996) (Anstead, J. concurring in part; dissenting in part). Unless the high court says otherwise, the crime described by Justice Shaw in Gentry[2] remains viable.
AFFIRMED.
*940 COBB, J., concurs specially, with opinion.
HARRIS, J., dissents, with opinion.
COBB, Judge, concurring specially.
I agree with the majority opinion that, assuming the existence in Florida of the offense of attempted second degree murder, the evidence here was sufficient to support the conviction. Therefore, the true issue we should consider, given the advent of State v. Gray, 654 So.2d 552 (Fla.1995), is whether or not the crime of attempted second degree murder is still recognized in Florida. If it is not, then the instant conviction would be for a non-existent crime and reviewable as fundamental error. See State v. Sykes, 434 So.2d 325, 328 (Fla.1983).
The statutory definitions of second degree murder and attempt are:
782.04 Murder.
(2) The unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual, is murder in the second degree.... (Emphasis added).
777.04 Attempts, solicitation and conspiracy.
(1) A person who attempts to commit an offense prohibited by law and in such attempt does any act toward the commission of such offense, but fails in the perpetration or is intercepted or prevented in the execution thereof, commits the offense of criminal attempt,.... (Emphasis added).
In 1983, the Florida Supreme Court addressed the question of whether Florida recognizes the crime of attempted second degree murder in the case of Gentry v. State, 437 So.2d 1097 (Fla.1983).[1] In a unanimous opinion authored by Justice Shaw the court stated:
Within recent months the district courts of appeal have grappled with this issue and extremely able judges have reached diametrically opposed positions. One school of thought rejects the notion that there can ever be an attempt without a specific intent, reasoning that one cannot attempt to do something without first forming the specific intent to accomplish that particular act. This position is consistent with our commonly-accepted definition of attempt: a specific intent to commit the crime and an overt act, beyond mere preparation, done towards the commission. The intent and the act must be such that they would have resulted in the completed crime except for the interference of some cause preventing the carrying out of the intent. Adams [Adams v. Murphy, 394 So.2d 411 (Fla.1981)]; Turner v. State, 100 Fla. 1078, 130 So. 617 (Fla.1930); Gustine v. State, 86 Fla. 24, 97 So. 207 (Fla.1923). The opposing school of thought emphasizes the illogic of requiring the state to prove an intent for successful prosecution of an attempt to commit a crime when no such degree of proof is necessary for successful prosecution of the completed crime.
The Court then held that there are offenses that may be prosecuted as an attempt without proof of a specific intent to commit a relevant completed offense, and that the key to recognizing such offenses is a determination of whether the completed offense is one requiring specific intent or general intent. If a showing of specific intent is not required in order for the State to successfully prosecute the completed crime, the Court said, then the State would not be required to show specific intent to successfully prosecute an attempt to commit that crime. The Court then observed that second degree murder and third degree (felony) murder are crimes requiring only general intent. Thus, the Court recognized the existence of the crime of attempted second degree murder.
Subsequently, however, in Thomas v. State, 531 So.2d 708 (Fla.1988), the Florida Supreme Court, without reference to Gentry, returned to the traditional interpretation of *941 an attempt pursuant to section 777.04(1), Florida Statutesi.e., an attempt exists only when there is an intent to commit a crime, coupled with an overt act apparently adapted to effect that intent, carried beyond mere preparation, but falling short of execution of the ultimate design. The Court cited to the older case of Gustine v. State, 86 Fla. 24, 26, 97 So. 207, 208 (1923), for this definition, which has been reaffirmed more recently in Rogers v. State, 660 So.2d 237, 238 (Fla. 1995). This established definition of the crime of attempt, of course, conflicts with the Gentry opinion, and that conflict was specifically noted by the Florida Supreme Court in Gray in footnote 1 of that opinion.
In Gray, the Court unanimously receded from its prior holding in Amlotte v. State, 456 So.2d 448 (Fla.1984), and held, contrary to Gentry, that the crime of felony murder does not exist in Florida. In doing so, the Court approved Justice Overton's dissenting view in Amlotte as reflecting the more logical and correct position. That dissent by Justice Overton stated:
A conviction for the offense of attempt has always required proof of the intent to commit the underlying crime. See Hutchinson v. State, 315 So.2d 546 (Fla. 2d DCA 1975); Robinson v. State, 263 So.2d 595 (Fla. 3d DCA 1972); Groneau v. State, 201 So.2d 599 (Fla. 4th DCA), review denied, 207 So.2d 452 (Fla.1967). By recognizing the crime of attempt with regard to felony murder, a crime in which the intent to kill is presumed, the Court has created a crime which necessitates the finding of an intent to commit a crime which requires no proof of intent. As stated by Judge Cowart in his dissenting opinion to the district court decision, this holding creates a "crime requiring one to intend to do an unintended act which is a logical absurdity and certainly an inadequate conceptual basis for something that needs to be as clear and understandable as do the elements of a felony crime." Amlotte v. State, 435 So.2d 249, 254 (Fla. 5th DCA 1983) (Cowart, J., dissenting).
If the crime of attempted felony murder does not exist, then neither, it would seem, could the crime of attempted second degree murderand for the same reasons. It is just as illogical to say that one can attempt (i.e., intend) to commit an unintended homicide by a depraved act as to say that one can attempt to commit an unintended homicide by commission of the underlying felony.[2]
Gray also noted our opinion in Grinage v. State, 641 So.2d 1362, 1366 (Fla. 5th DCA 1994), approved, 656 So.2d 457 (Fla.1995), wherein we said that the offense of murder contemplates a completed act of homicide, and an intent to murder should not be presumed where there is no death simply because an assault occurs during the commission or attempted commission of a felony. Gray at 554. Since the Florida Supreme Court agrees with the reasoning in Grinage, as it apparently did in Gray, then it should also agree that no intent to murder should be inferred from a depraved act (not intended to kill) where no death results.
That progression in logic, however, has not occurred. Subsequent to Gray, the Florida Supreme Court again has recognized the existence of the crime of attempted second degree murder. See State v. Wilson, 680 So.2d 411 (Fla.1996); Harris v. State, 674 So.2d 110 (Fla.1996). Apparently there was no challenge raised in either Wilson or Harris as to the existence of that crime; nevertheless, we are bound by those cases until the Florida Supreme Court directly addresses the issue again.
I therefor concur with the majority opinion.
HARRIS, Judge, dissenting.
I dissent because I believe that an attempt to commit one crime cannot logically, under Blockburger, ever be a necessarily lesser included offense of an attempt to commit another crime because of the separate element (the specific intent to commit the underlying offense) contained in each offense. See the concurring specially opinion in Morton v. *942 State, 701 So.2d 644 (Fla. 5th DCA 1997). And, the information in this case does not warrant treating one attempt as a permissive lesser included offense of the other. The supreme court in Taylor v. State, 444 So.2d 931, 933 (Fla.1983), in holding that voluntary manslaughter includes the intent to kill, cited an earlier opinion stating: "There is nothing in the definition of manslaughter to exclude from its provisions all intentional homicides..." But even as to attempted manslaughter, that begs the question. Since voluntary manslaughter can also be committed by one who does not intend to kill, the fact that such offense might also accommodate an unpremeditated intentional killing does not make such intent an element of the offense. And we have repeatedly been told by the supreme court that in determining whether one offense is the lesser included offense of another under Blockburger, we must consider only the elements of the offenses, and not the facts of the case. See State v. Baker, 456 So.2d 419, 420 (Fla.1984) ("In determining whether separate convictions may flow from a single event one looks at the statutory elements of the charged crimes, as opposed to the language of the charging document.") Under Taylor's reasoning, even if Watkins had an unpremeditated intent to kill, it would not have constituted attempted second degree murder but rather attempted manslaughter. For this reason alone, the cause should be reversed. To uphold the conviction in this case is in conflict with State v. Gray, 654 So.2d 552 (Fla.1995).
And although I agree with Judge Cobb that logically there now exists no such crime in Florida as attempted second degree murder, I approach it from a different perspective. Because an attempt is merely failed intent, I think it is important that we focus on the intent criminalized by the statute. I acknowledge that the supreme court in Gentry v. State 437 So.2d 1097 (Fla.1983) specifically held that there is such a crime as attempted second degree murder, but that holding has at least been brought into question by Gray. But because Gray did not explicitly overrule Gentry, and because the supreme court has since followed Gentry without reference to Gray, Gentry cannot be ignored as precedent.
Because we are bound by the decisions of the supreme court, some suggest that our inquiry should end once we find supreme court precedent. That is too narrow a view of our purpose, our role, our obligation as appellate court judges. While the supreme court is ultimately responsible for determining the law of Florida, it does not do so in a vacuum. We are the laboratory that supplies much of the research for its decisions. That is true in establishing the law in the first instance and it is true when the supreme court considers the continued viability of contested law. We are particularly important in those cases in which existing law is challenged. Indeed, we are critical. We see "close up and personal" the results of a particular supreme court decision or the effect of a principle of law announced by the supreme court. We hear the differing arguments based on different circumstances as members of the bar attempt to challenge existing law. If we ignore the challenges and merely affirm on the basis of precedent, then legitimate issues relating to the continued validity of questionable law may be lost because the supreme court lacks jurisdiction to hear the cause.
Even though we must apply the law as it is, we are free to test and examine existing law, and if we disagree with it, to imagine the law as it should be and to urge acceptance of law as we envision it. Precedent is like a barbed-wire fence in that it restrains our actions while permitting us to look through the enclosure in search of a better solution and, if we believe we have found one, to recommend its consideration by the supreme court. And it does not matter whether we are always right; it is the process that is important. The supreme court is always free to reject, and most often does, our recommendations.
A second degree murder is one committed by "an act imminently dangerous to another and evincing a depraved mind regardless of human life." Thus, one need not intend to cause the death of another in order to commit second degree murder; it is only required that death result from the act of one who does not care if his act causes the death *943 of another. Second degree murder, therefore, is caused by happenstance. How does one attempt happenstance? The court in Gentry described second degree murder as a general intent crime (without stating what that intent was) and held that one could be convicted of attempted second degree murder even if there is no specific intent to kill. Indeed, a specific intent to kill is not an element of second degree murder. However, State v. Gray, supra, makes it clear that in order to prove an attempt, the State must prove the intent to commit the underlying crime. So how do you "attempt" second degree murder? If intent to cause the death of another is not an element of second degree murder, what must the defendant have attempted (intended) to do which failed?[1] It can only be that the attempt (intent) was to commit an act which is imminently dangerous to another evincing a depraved mind regardless of human life. Although the shooting at or near Thompson would seem clearly to meet this test, this act was not attemptedit was spectacularly achieved. If you complete the act prohibited by the statute, what have you attempted? More importantly, what crime have you committed? I believe the answer is second degree murder if the victim dies; perhaps aggravated battery or aggravated assault (depending on the pleadings and the facts) if the victim lives.
Since proof of a completed crime will not permit instructing the jury on an attempt to commit that crimesee Wilson v. State, 635 So.2d 16 (Fla.1994); Rule 3.510, Fla. R.Crim. P.proof of a completed act should prevent sending to the jury the issue of whether the defendant attempted to commit that act when such proof is essential to establish the crime charged.
The supreme court in Gentry, and again in Gray, acknowledged that there are certain crimes that simply will not carry an attempt. It is submitted that the court should reexamine all homicides other than first degree premeditated murder to see if they are subject to an attempt. If the intent to kill is not an element of the homicide offense (and it is not in second degree murder and third degree murder, and it is not a statutory element of manslaughterbut see Taylor v. State, 444 So.2d 931 (Fla.1983)), then the only intent required by the statute to commit the homicide is the intent to commit an act (or a designated felony if the charge is third degree murder)[2] which causes death. If that act (or felony) is completed, even if no death occurs, it cannot logically be said that the defendant attempted to commit a crime in which death is an element but the intent to cause death is not.
I would reverse but, because of Gentry, I would certify the issue to the supreme court.
NOTES
[1] "We now believe that the application of the majority's holding in Amlotte has proven more troublesome than beneficial and that Justice Overton's view is the more logical and correct position." Gray, 654 So.2d at 553. In Gentry on the other hand, Justice Overton was part of the unanimous majority.
[2] Had a homicide occurred, there can be no doubt that the appellant could have been successfully prosecuted for second-degree murder without the state adducing proof of a specific intent to kill. The fact that [the victim] survived was not the result of any design on the part of the appellant not to effect death but was simply fortuitous. We can think of no good reason to reward the appellant for such fortuity by imposing upon the state the added burden of showing a specific intent to kill in order to successfully prosecute the attempted offense.

Gentry, 437 So.2d at 1099.
[1] See also State v. Overfelt, 457 So.2d 1385 (Fla. 1984).
[2] See, e.g., Williams v. State, 41 Fla. 295, 26 So. 184 (1899) (no man can intentionally do an unintentional act).
[1] The supreme court recognizes two types of intent to kill. First, there is the premeditated design to kill (first degree premeditated murder). Then there is the intent which falls short of the premeditated design. These are the spur of the moment, sudden impulse killings described in Taylor v. State, 444 So.2d 931 (Fla.1983). But the sudden impulse killings, although not a statutory element of either, are determined by the supreme court to be voluntary manslaughter and not second degree murder. Again, what was the failed intent? If the intent was to kill the victim, should not the charge be either attempted first degree murder (dismissed in this case) or attempted manslaughter?
[2] After Gray, we know that there is now no such offense as attempted third degree murder. The supreme court will no longer assume that a death was intended merely because an assault was committed during the commission or attempted commission of a felony. The court should now decide whether one shown to have had an unpremeditated intent to kill another, but failed in the attempt, can be convicted of attempting an offense which does not include the intent to kill as an element.