790 So.2d 389 (2000)
Darnell L. BROWN, Petitioner,
v.
STATE of Florida, Respondent.
No. SC95844.
Supreme Court of Florida.
October 5, 2000.
Rehearing Denied May 31, 2001.
James B. Gibson, Public Defender, and Noel A. Pelella and Barbara C. Davis, Assistant Public Defenders, Seventh Judicial Circuit, Daytona Beach, FL, for Petitioner.
Robert A. Butterworth, Attorney General, and Belle B. Schumann and Wesley Heidt, Assistant Attorneys General, Daytona Beach, FL, for Respondent.
PER CURIAM.
We have for review a decision ruling upon the following question certified to be of great public importance:
DOES THE CRIME OF ATTEMPTED SECOND DEGREE MURDER EXIST IN FLORIDA?
Brown v. State, 733 So.2d 598, 599 (Fla. 5th DCA 1999). We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution. We answer the certified question in the affirmative.
Brown was convicted of attempted second-degree murder. On appeal, Brown argued that the crime of attempted second-degree *390 murder is a nonexistent crime. The district court affirmed the conviction but certified the above question to our Court.
We recently addressed the crime of attempted second-degree murder in State v. Brady:
The offense of attempted second-degree murder does not require proof of the specific intent to commit the underlying act (i.e., murder). See Gentry v. State, 437 So.2d 1097 (Fla.1983). In Gentry, we held that the crime of attempted second-degree murder does not require proof of the specific intent to kill. Although the crime of attempt generally requires proof of a specific intent to commit the crime plus an overt act in furtherance of that intent, we reasoned: "If the state is not required to show specific intent to successfully prosecute the completed crime, it will not be required to show specific intent to successfully prosecute an attempt to commit that crime." Id. at 1099. To establish attempted second-degree murder of Harrell, the state had to show (1) that Brady intentionally committed an act which would have resulted in the death of Harrell except that someone prevented him from killing Harrell or he failed to do so, and (2) that the act was imminently dangerous to another and demonstrated a depraved mind without regard for human life. See Standard Jury Instructions in Criminal Cases, 697 So.2d 84, 90 (Fla.1997).
745 So.2d 954, 957 (Fla.1999). Accordingly, as explained in Brady, we conclude that the crime of attempted second-degree murder does exist in Florida. We approve the district court's decision in this case.
It is so ordered.
WELLS, C.J., and SHAW, LEWIS and QUINCE, JJ., concur.
HARDING, J., dissents with an opinion, in which ANSTEAD and PARIENTE, JJ., concur.
HARDING, J., dissenting.
I respectfully dissent. At least one appellate court has struggled over the issue of whether the crime of attempted second-degree murder exists in Florida. See Watkins v. State, 705 So.2d 938 (Fla. 5th DCA 1998). Two of the judges on that court wrote well-reasoned opinions arguing that both precedent and common sense require the judiciary to abolish the crime of attempted second-degree murder in Florida. After reviewing these opinions and considering the history of attempt law in this state, I believe the time has come to clarify the elements of the crime of attempt and conclude that the crime of attempted second-degree murder is logically impossible.
Florida's attempt statute provides:
A person who attempts to commit an offense prohibited by law and in such attempt does any act toward the commission of such offense, but fails in the perpetration or is intercepted or prevented in the execution thereof, commits the offense of criminal attempt, ranked for purposes of sentencing as provided in subsection (4).
§ 777.04(1), Fla. Stat. (1999). The jury instructions on attempt provide:
In order to prove that the defendant attempted to commit the crime of (crime charged), the State must prove the following beyond a reasonable doubt:
1. (Defendant) did some act toward committing the crime of (attempted crime) that went beyond just thinking or talking about it.
2. [He][She] would have committed the crime except that [someone prevented *391 [him] [her] from committing the crime of (crime charged) or [[he] [she] failed.]
Fla. Std. Jury Instr. (Crim.) 77.
In Gentry v. State, this Court stated:
We have previously determined that despite the broad language of our attempt statute, there are certain crimes of which it can be said that the attempt thereof simply does not exist as an offense. Adams[ v. Murphy, 394 So.2d 411 (Fla.1981)]; State v. Thomas, 362 So.2d 1348 (Fla.1978). See also King v. State, 317 So.2d 852 (Fla. 1st DCA 1975). We now hold that there are offenses that may be successfully prosecuted as an attempt without proof of a specific intent to commit the relevant completed offense. The key to recognizing these crimes is to first determine whether the completed offense is a crime requiring specific intent or general intent. If the state is not required to show specific intent to successfully prosecute the completed crime, it will not be required to show specific intent to successfully prosecute an attempt to commit that crime. We believe there is logic in this approach and that it comports with legislative intent. Second-degree and third-degree murder under our statutes are crimes requiring only general intent.
437 So.2d 1097, 1098-99 (Fla.1983). I believe that the application of Gentry has proven more troublesome than beneficial.
"A specific intent, when an element of the mens rea of a particular offense, is some intent other than to do the actus reus thereof which is specifically required for guilt." Rollin M. Perkins & Ronald N. Boyce, Criminal Law 851 (3d ed.1982). In contrast, "general intent" would simply be the intent required to do the actus reus of a particular offense. See id. Perkins cites to common law larceny and burglary as examples to illustrate specific intent. In addition to the intent to take and carry away the property of another, conviction for larceny required proof of an additional specific intent to steal. Similarly, conviction of common law burglary required not only an intentional breaking and entering, but also a specific intent to commit a felony therein.
According to the guidelines of Gentry, the crime of attempted second-degree murder is a general intent crime because the underlying crime, second-degree murder, is a general intent crime. Thus, under the current law, the State is not required to establish a specific intent to kill in order to prove the crime of attempted second-degree murder. In fact, if the underlying crime is a general intent crime, the State can prove an attempt of that crime without ever establishing that the defendant intended to commit the underlying offense. This is an absurd result. Further, an examination of our opinions subsequent to Gentry reveals that this Court has failed to consistently apply the Gentry test in cases involving attempts.
In Thomas v. State, this Court provided the following definition of attempt:
Essentially, we have required the state to prove two general elements to establish an attempt: a specific intent to commit a particular crime, and an overt act toward its commission. That is, the overt act must manifest the specific intent.
531 So.2d 708, 710 (Fla.1988). It would appear that this definition of attempt would make the crime a specific intent crime because the State would be required to establish that the defendant had a specific intent to commit the underlying offense. The Thomas court relied on the definition of attempt that was articulated by this Court in Gustine v. State, 86 Fla. 24, 26, 97 So. 207, 208 (1923). The Gustine *392 definition of attempt had been the standard prior to Gentry. Arguably, Thomas can be reconciled with Gentry because the underlying offense in Thomas was burglary. Because burglary is a specific intent crime, see Richardson v. State, 723 So.2d 910, 911 (Fla. 1st DCA 1999), then, under Gentry, attempted burglary would also be classified as a specific intent crime, and the Thomas court relied on the proper definition of attempt.
However, in Rogers v. State, this Court again relied on the same definition of attempt: "To establish attempt, the State must prove a specific intent to commit a particular crime and an overt act toward the commission of that crime." 660 So.2d 237, 241 (Fla.1995). In Rogers, the underlying offense was sexual battery, which has been declared a general intent crime. See Buford v. State, 492 So.2d 355, 359 (Fla. 1986). Thus, the Rogers court classified attempted sexual battery as a specific intent crime, but according to the Gentry analysis, it should have been a general intent crime. In 1991 and again in 1993, this Court stated that attempted sexual battery was a general intent crime. See Sochor v. State, 580 So.2d 595, 601 (Fla. 1991), vacated on other grounds, 504 U.S. 527, 112 S.Ct. 2114, 119 L.Ed.2d 326 (1992); Sochor v. State, 619 So.2d 285, 290 (Fla.1993). But in 1997, this Court again cited to Rogers and stated that in order to prove attempted sexual battery, the State must prove "a specific intent to commit a particular crime." See Gudinas v. State, 693 So.2d 953, 962 (Fla.1997).
Finally, in State v. Gray, 654 So.2d 552 (Fla.1995), this Court adopted Justice Overton's dissent in Amlotte v. State, 456 So.2d 448 (Fla.1984) (Overton, J., dissenting), wherein he argued that the crime of attempted felony murder was logically impossible. The Gray court quoted the following language from Justice Overton's dissent: "[A] conviction for the offense of attempt requires proof of the specific intent to commit the underlying crime." Gray, 654 So.2d at 553 (emphasis added).
Clearly, there is confusion in this area of the law. This Court has taken the Jekyll and Hyde approach to defining the crime of attempt: it has been classified as both a specific intent crime and a general intent crime, regardless of the guidelines set by Gentry. If the Gentry test is still valid, then this Court has failed to uniformly adhere to it.
Most of the jurisdictions in this country classify the crime of attempt as a specific intent crime. Generally, these jurisdictions require that two elements be established before a defendant can be found guilty of an attempt: (1) intent to commit the underlying offense and (2) an overt act in furtherance of the underlying offense but failing to effect its commission. See United States v. Pierce, 16 F.3d 1223 (6th Cir. Dec.9, 1993) (unpublished opinion); United States v. Inigo, 925 F.2d 641, 651 (3d Cir.1991); United States v. Sneezer, 900 F.2d 177, 179-180 (9th Cir.1990); United States v. Martin, 747 F.2d 1404, 1410 (11th Cir.1984); United States v. Rivera-Sola, 713 F.2d 866, 869 (1st Cir.1983); United States v. Monholland, 607 F.2d 1311, 1318 (10th Cir.1979); Chaney v. State, 417 So.2d 625, 626-27 (Ala.Crim. App.1982) (citing Ala.Code § 13A-4-2); Huitt v. State, 678 P.2d 415 (Alaska Ct. App.1984) (citing Alaska Stat. § 11.31.100(a)); State v. Kiles, 175 Ariz. 358, 857 P.2d 1212, 1225 (Ariz.1993) (citing Ariz.Rev.Stat. § 13-1001(A)(2)); People v. Kipp, 18 Cal.4th 349, 75 Cal.Rptr.2d 716, 956 P.2d 1169, 1186 (1998); State v. Faulkner, 61 Haw. 177, 599 P.2d 285, 286 (1979) (citing Haw.Rev.Stat. § 705-500); People v. Viser, 62 Ill.2d 568, 343 N.E.2d 903, 910 (1975) (citing Ill.Rev.Stat. ch. 38, par. 8-4); State v. Gayden, 259 Kan. 69, 910 P.2d 826, *393 833 (1996) (citing Kan. Stat. Ann. § 21-3301(a)); State v. Smith, 661 So.2d 442, 443 (La.1995) (citing La.Rev.Stat. Ann. § 14:27); State v. O'Farrell, 355 A.2d 396, 399 (Me.1976) (citing Me.Rev.Stat. Ann. tit. 17, § 164); Bruce v. State, 317 Md. 642, 566 A.2d 103, 104 (1989); People v. Langworthy, 416 Mich. 630, 331 N.W.2d 171, 176 (1982); State v. Zupetz, 322 N.W.2d 730, 734 (Minn.1982); Harris v. State, 642 So.2d 1325, 1328 (Miss.1994); State v. Hemmer, 3 Neb.App. 769, 531 N.W.2d 559, 564 (1995); Curry v. State, 106 Nev. 317, 792 P.2d 396, 397 (1990) (citing Nev.Rev. Stat. § 193.330); State v. Ayer, 136 N.H. 191, 612 A.2d 923, 925 (1992) (citing N.H.Rev.Stat. Ann. § 629:1); State v. Rhett, 127 N.J. 3, 601 A.2d 689, 691 (1992); State v. Green, 116 N.M. 273, 861 P.2d 954, 961 (1993) (citing N.M. Stat. Ann. § 30-28-1); People v. Flores, 84 N.Y.2d 957, 620 N.Y.S.2d 823, 644 N.E.2d 1379, 1380 (1994) (citing N.Y. Penal Law § 110.00); State v. Hageman, 307 N.C. 1, 296 S.E.2d 433, 441 (1982); State v. Smith, 21 Or.App. 270, 534 P.2d 1180, 1182 (1975); Commonwealth v. Griffin, 310 Pa.Super. 39, 456 A.2d 171, 177 (1983); State v. Lyerla, 424 N.W.2d 908, 912 (S.D.1988); State v. Kimbrough, 924 S.W.2d 888, 890 (Tenn.1996) (citing Tenn.Code Ann. § 39-12-101); Mims v. State, 3 S.W.3d 923, 924 (Tex.Crim.App. 1999) (citing Texas Penal Code Ann. § 15.01); State v. Vigil, 842 P.2d 843 (Utah 1992); Johnson v. Commonwealth, 209 Va. 291, 163 S.E.2d 570, 573 (1968); State v. Dunbar, 117 Wash.2d 587, 817 P.2d 1360, 1362 (1991) (citing Wash. Rev.Code § 9A.28.020); State v. Davis, 205 W.Va. 569, 519 S.E.2d 852, 860 n. 14 (1999); State v. Melvin, 49 Wis.2d 246, 181 N.W.2d 490, 492 (1970), overruled on other grounds by State v. Smith, 55 Wis.2d 304, 198 N.W.2d 630 (1972); Sanchez v. State, 567 P.2d 270, 275 (Wyo.1977).
My research has revealed only one state that has endorsed the Gentry test for determining whether attempt is a specific intent or general intent crime. See Palmer v. People, 964 P.2d 524, 528 (Colo.1998) ("It is possible to be convicted of attempt without the specific intent to obtain the forbidden result."). The Palmer court acknowledged in a footnote that "Colorado's attempt jurisprudence differs from the majority of jurisdictions, which hold that attempt liability cannot attach when the substantive crime involved is an unintentional crime." 964 P.2d at 528 n. 4.
Webster's Dictionary provides the following definition for attempt: "to make an effort to do, accomplish, solve, or effect." Merriam Webster's Collegiate Dictionary 74 (10th ed.1993). In State v. Kimbrough, the Tennessee Supreme Court stated:
"An attempt, by nature, is a failure to accomplish what one intended to do. Attempt means to try; it means an effort to bring about a desired result." Keys v. State, 104 Nev. 736, 766 P.2d 270, 273 (1988). The concept of attempt seems necessarily to involve the notion of an intended consequence, for when one attempts to do something one is endeavoring or trying to do it. Hence, an attempt requires a desired, or at least an intended, consequence. Paul H. Robinson & Jane A. Grail, Element Analysis in Defining Criminal Liability: The Model Penal Code and Beyond, 35 Stan. L.Rev. 681, 747 n. 290 (1983). The nature of an attempt, then, is that it requires a specific intent.
924 S.W.2d at 890.
In light of the fact that this State's classification of the crime of attempt is contrary to the overwhelming majority of jurisdictions in this country, I question the reasons that this Court initially relied upon to formulate the Gentry test. The Gentry court argued that the State should not be *394 required to prove an intent for a successful prosecution of an attempt to commit a crime when no such degree of proof is necessary for successful prosecution of the completed crime. However, there is a substantial distinction between a completed crime and an attempt. In a case involving a completed crime, the State is punishing a defendant for conduct which was carried out to completion. In contrast, in a case involving an attempt, an inchoate crime, there is no completed offense, so the State is punishing a defendant for conduct preparatory to the offense coupled with the intent to commit such an offense. Unlike the completed offense, mere preparatory conduct without any intent should not be enough to establish an attempt.
Therefore, based on the reasons stated above, I would recede from Gentry and conclude that all attempt crimes require a specific intent to commit the underlying offense, consistent with Gudinas, Thomas, Rogers, Gustine, and Gray. I am mindful of the importance of the doctrine of stare decisis. See State v. Schopp, 653 So.2d 1016, 1023 (Fla.1995) (Harding, J., dissenting) ("[S]tare decisis provides stability to the law and to the society governed by that law."). Yet, as this Court stated in Gray, "stare decisis does not command blind allegiance to precedent." 654 So.2d at 554. Hindsight has revealed that the Gentry test has proven unworkable, as even this Court has been unable to consistently apply it. "Perpetuating an error in legal thinking under the guise of stare decisis serves no one well and only undermines the integrity and credibility of the Court." Smith v. Dep't. of Ins., 507 So.2d 1080, 1096 (Fla.1987) (Ehrlich, J., concurring in part, dissenting in part).
Receding from Gentry would not eliminate the crime of attempt for general intent crimes. Rather, it would simply require the State to establish that the defendant specifically intended to commit the underlying offense which the defendant is accused of attempting.[1]See *395 Guertin, 854 P.2d at 1132 ("To be guilty of attempt under this statute, the defendant must intend to commit the target crime; however, [the attempt statute] does not purport to limit target crimes to offenses that require an intended result.").
After concluding that attempt is a specific intent crime, the next question becomes whether a defendant can specifically intend to commit second-degree murder. Second-degree murder does not require intent; it only requires a form of recklessness: "a depraved mind without regard for human life." In Watkins, Judge Cobb and Judge Harris both argued that it is illogical to have the crime of attempted seconddegree murder because it is impossible to intend to commit an act of recklessness.[2] I am convinced by their reasoning.
*396 Murder is divided into degrees based on the mental state of the defendant: if the defendant intended to murder, then the crime is first-degree murder; if the defendant did not intend to murder, but still displayed reckless indifference to human life, then the crime is second-degree murder. The question in this case is not whether the crime of attempted murder exists. If the State can establish that the defendant intended to kill, then the crime is attempted first-degree murder. But if the State cannot demonstrate that the defendant intended to kill, it cannot be said that the defendant committed the crime of attempted murder. The crime may be aggravated battery or aggravated assault, but not attempted murder. The jury instructions for attempted second-degree murder provide:
Before you can find the defendant guilty of Attempted Second Degree Murder, the State must prove the following two elements beyond a reasonable doubt:
1. (Defendant) intentionally committed an act which would have resulted in the death of (victim) except that someone prevented (defendant) from killing (victim) or [he][she] failed to do so.
2. The act was imminently dangerous to another and demonstrating a depraved mind without regard for human life.
. . . .
In order to convict of attempted second-degree murder, it is not necessary for the State to prove the defendant had an intent to cause death.
Fla. Std. Jury Instr. (Crim.) 87 (emphasis added). Many of the jurisdictions that define attempt as a specific intent crime conclude that the defendant must intend to engage in a particular combination of conduct, results, and circumstances that amount to the underlying crime. Where a crime is defined in terms of acts causing a particular result, a defendant charged with attempt must have specifically intended to accomplish that criminal result. See Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 6.2(c), at 500 (2d ed.1986). Murder is a result-oriented crime which cannot be proven without first establishing the "result element" that a person is dead. In light of the conclusion that attempt is a specific intent crime, it follows that a person cannot be convicted of attempted murder if that person did not intend the result of death. It is not enough that the defendant simply intended certain conduct without also intending the result (i.e., although a defendant may have intended to fire a gun at a house, if the defendant did not intend to kill, this should not amount to an attempted murder). See, e.g., Roa, 12 M.J. at 212 ("Appellate defense counsel have suggested that the government's theory would produce some anomalous results.... [A]n accused who had fired into [a large] crowd with no intent to kill anyone but with a wanton disregard for human life and had injured no one could, under the government's theory, be convicted of a separate attempt to murder every person in the crowd.").
The case of Braxton v. United States, 500 U.S. 344, 111 S.Ct. 1854, 114 L.Ed.2d *397 385 (1991), supports this argument. In Braxton, the United States Supreme Court stated the following in a footnote:
Since the statute does not specify the elements of "attempt to kill," they are those required for an "attempt" at common law, see Morissette v. United States, 342 U.S. 246, 263, 72 S.Ct. 240, 96 L.Ed. 288 (1952), which include a specific intent to commit the unlawful act. "Although a murder may be committed without an intent to kill, an attempt to commit murder requires a specific intent to kill." 4 C. Torcia, Wharton's Criminal Law § 743, p. 572 (14th ed.1981). See also R. Perkins & R. Boyce, Criminal Law 637 (3d ed.1982); W. LaFave & A. Scott, Criminal Law 428-429 (1972).
Id. at 351 n. 1, 111 S.Ct. 1854 (1991) (emphasis added).
Most of the jurisdictions that have considered the issue have concluded that the crime of attempted depraved mind or reckless murder does not exist. See Chaney v. State, 417 So.2d 625, 626-27 (Ala.Crim. App.1982); Huitt v. State, 678 P.2d 415 (Alaska Ct.App.1984); State v. Mandel, 78 Ariz. 226, 278 P.2d 413 (Ariz.1954); People v. Miller, 2 Cal.2d 527, 42 P.2d 308 (1935); State v. Trinkle, 68 Ill.2d 198, 12 Ill.Dec. 181, 369 N.E.2d 888, 892 (1977); State v. Roberts, 213 La. 559, 35 So.2d 216 (1948); Abernathy v. State, 109 Md.App. 364, 675 A.2d 115, 121 (1996); People v. Hall, 174 Mich.App. 686, 436 N.W.2d 446, 447 (1989); State v. Dahlstrom, 276 Minn. 301, 150 N.W.2d 53, 58-59 (1967); State v. Rhett, 127 N.J. 3, 601 A.2d 689 (1992); State v. Johnson, 103 N.M. 364, 707 P.2d 1174, 1177 (N.M.Ct.App.1985); Commonwealth v. Griffin, 310 Pa.Super. 39, 456 A.2d 171, 177 (1983); State v. Lyerla, 424 N.W.2d 908, 913 (S.D.1988); State v. Vigil, 842 P.2d 843 (Utah 1992); Thacker v. Commonwealth, 134 Va. 767, 114 S.E. 504, 506 (1922); State v. Dunbar, 117 Wash.2d 587, 817 P.2d 1360, 1362 (1991); State v. Melvin, 49 Wis.2d 246, 181 N.W.2d 490 (1970) overruled on other grounds by State v. Smith, 55 Wis.2d 304, 198 N.W.2d 630 (1972). Since Colorado is the only state that adopts the Gentry test, it is also the only state that recognizes attempted depraved-mind murder without requiring the state to prove an intent to murder. See People v. Castro, 657 P.2d 932 (Colo.1983).
Professor LaFave and Professor Scott provide the following analysis of this issue:
Some crimes, such as murder, are defined in terms of acts causing a particular result plus some mental state which need not be an intent to bring about that result. Thus, if A, B, C and D have each taken the life of another, A acting with intent to kill, B with an intent to do serious bodily injury, C with a reckless disregard of human life, and D in the course of a dangerous felony, all three are guilty of murder because the crime of murder is defined in such a way that any one of these mental states will suffice. However, if the victims do not die from their injuries, then only A is guilty of attempted murder; on a charge of attempted murder it is not sufficient to show that the defendant intended to do serious bodily harm, that he acted in reckless disregard for human life, or that he was committing a dangerous felony. Again, this is because intent is needed for the crime of attempt, so that attempted murder requires an intent to bring about that result described by the crime or murder (i.e., the death of another).
2 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 6.2(c), at 24 (1986) (footnotes omitted).
For all of these reasons, I find that it is logically impossible to commit the crime of attempted second-degree murder. This *398 does not mean that the defendant in the present case has not committed a crime; the defendant may still be guilty of aggravated battery, a second-degree felony. The defendant should not, however, be convicted of attempted murder without first establishing that he intended to commit murder.
ANSTEAD and PARIENTE, JJ., concur.
NOTES
[1] The main effect of concluding that all attempts are specific intent crimes is that the defense of voluntary intoxication would be applicable to attempts. See Linehan v. State, 476 So.2d 1262, 1264 (Fla.1985) ("[T]he intoxication defense applies only to specific intent crimes.") This does not seem unreasonable because if a defendant is so intoxicated that he or she cannot form a specific intent, then it would be illogical to conclude that the defendant had the mental capacity to attempt a crime. Although it is quite possible that a voluntary intoxication instruction would be read to the jury on the attempt charge but not on the completed offense, it appears that other courts have followed this procedure, apparently without problems. For example, in Guertin v. State, 854 P.2d 1130, 1133 (Alaska Ct.App.1993), the Alaska court stated:

Guertin complains that the jury instructions were confusing because they asked the jury to apply two different culpable mental states to "sexual contact". Guertin points out that, when describing the completed crime of second-degree sexual assault, the instructions refer to "sexual contact" as the proscribed conduct (to which the culpable mental state of "knowingly" applies), but when describing attempted second-degree sexual assault, the instructions refer to "sexual contact" as the result (to which the culpable mental state of "intentionally" applies).
This is not a confusion; it is correct. The completed crime of second-degree sexual assault requires proof of conduct (sexual contact) and a circumstance (the victim's lack of consent). Because sexual contact is the "conduct" element of the completed crime, the culpable mental state that applies to sexual contact is "knowingly". On the other hand, attempted second-degree sexual assault is an inchoate crime: by definition, the prohibited non-consensual sexual contact has not occurred, and the issue is whether the defendant's conduct constituted a substantial step toward accomplishing the goal of sexual contact. AS 11.31.100(a). In the context of an attempt, sexual contact is a "result"the conscious goal of a defendant's actionsand the applicable culpable mental state is "intentionally".
See also United States v. Roa, 12 M.J. 210, 213 & n. 3 (C.M.A.1982) ("[A] general intent will suffice to prove rape; but a specific intent to rape is requisite to establish guilt of attempt to rape or assault with intent to rape. [Note 3:] Thus, intoxication may relieve of culpability for an attempt to commit an offense such as rape or assault with intent to commit rape when it would not be a defense in a prosecution for commission of the principle offense.").
[2] In a concurring opinion in Watkins, Judge Cobb offered some compelling reasons for abolishing the crime of attempted second-degree murder:

In [State v. Gray, 654 So.2d 552 (Fla. 1995)], the Court unanimously receded from its prior holding in Amlotte v. State, 456 So.2d 448 (Fla.1984), and held, contrary to Gentry [v. State, 437 So.2d 1097 (Fla.1983)], that the crime of felony murder does not exist in Florida. In doing so, the Court approved Justice Overton's dissenting view in Amlotte as reflecting the more logical and correct position. That dissent by Justice Overton stated:
A conviction for the offense of attempt has always required proof of the intent to commit the underlying crime. By recognizing the crime of attempt with regard to felony murder, a crime in which the intent to kill is presumed, the Court has created a crime which necessitates the finding of an intent to commit a crime which requires no proof of intent. As stated by Judge Cowart in his dissenting opinion to the district court decision, this holding creates a "crime requiring one to intend to do an unintended act which is a logical absurdity and certainly an inadequate conceptual basis for something that needs to be as clear and understandable as do the elements of a felony crime." Amlotte v. State, 435 So.2d 249, 254 (Fla. 5th DCA 1983) (Cowart, J., dissenting).
If the crime of attempted felony murder does not exist, then neither, it would seem, could the crime of attempted second-degree murderand for the same reasons. It is just as illogical to say that one can attempt (i.e., intend) to commit an unintended homicide by a depraved act as to say that one can attempt to commit an unintended homicide by commission of the underlying felony. [Note 2: See, e.g., Williams v. State, 41 Fla. 295, 26 So. 184 (1899) (no man can intentionally do an unintentional act) ].
Id. at 940-41 (Cobb, J., concurring) (citations omitted).
In his dissent, Judge Harris articulated additional reasons for eliminating attempted second-degree murder:
[O]ne need not intend to cause the death of another in order to commit second-degree murder; it is only required that death result from the act of one who does not care if his act causes the death of another. Second-degree murder, therefore, is caused by happenstance. How does one attempt happenstance? The court in Gentry described second-degree murder as a general intent crime (without stating what that intent was) and held that one could be convicted of attempted second-degree murder even if there is no specific intent to kill. Indeed, a specific intent to kill is not an element of second-degree murder. However, State v. Gray, supra, makes it clear that in order to prove an attempt, the State must prove the intent to commit the underlying crime. So how do you "attempt" second-degree murder? If intent to cause the death of another is not an element of second-degree murder, what must the defendant have attempted (intended) to do which failed? It can only be that the attempt (intent) was to commit an act which is imminently dangerous to another evincing a depraved mind regardless of human life. Although the shooting at or near Thompson would seem clearly to meet this test, this act was not attempted it was spectacularly achieved. If you complete the act prohibited by the statute, what have you attempted? More importantly, what crime have you committed? I believe the answer is second degree murder if the victim dies; perhaps aggravated battery or aggravated assault (depending on the pleadings and the facts) if the victim lives.
Id. at 942-43 (Harris, J., dissenting) (footnote omitted).