799 So.2d 394 (2001)
Richard REID, Appellant,
v.
STATE of Florida, Appellee.
No. 4D99-3189.
District Court of Appeal of Florida, Fourth District.
November 14, 2001.
*395 A. Randall Haas and Alisa Smith, South Orange, NJ, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Jeanine M. Germanowicz, Assistant Attorney General, West Palm Beach, for appellee.
DELL, J.
Richard Reid appeals his convictions for two counts of attempted second degree murder and one count of carrying a concealed firearm. He also appeals his sentence of nineteen years in prison with a three-year minimum mandatory sentence. We affirm appellant's convictions, but reverse his sentences on the attempted second degree murder convictions and remand for resentencing.
On April 30, 1997, appellant and his wife,[1] Ingrid Abraham, went to a Sears store in the Broward Mall. After observing his suspicious behavior through a surveillance video camera, security officers began to monitor appellant's movements in the store. Security guards Windes and Woods became concerned that appellant had stolen an item from the store and decided to *396 approach him. The surveillance videotape showed the guards following appellant outside to the parking lot as he and Ms. Abraham walked to their car. As the distance closed between appellant and the security guards, appellant appeared to turn around fully to face the two guards, and to stumble as one guard reached out for him. Appellant dropped to the ground, drew a firearm and shot Windes three times at point blank range, striking him in the throat/jaw area and the abdomen. Appellant then crouched on one knee, aimed directly at the fleeing Woods and fired twice, missing him. According to Windes, as the two guards had first approached appellant, and as appellant was turning around, Windes had identified himself as "Sears security." After the shooting, appellant and Ms. Abraham ran to a car driven by Roosevelt Reid (no relation to appellant), entered the car and left the scene. Appellant and Ms. Abraham then fled to Philadelphia and New York. Appellant was apprehended months later in New York.
The State charged appellant with two counts of attempted first degree murder, one count of felony causing bodily injury, and one count of carrying a concealed firearm. At trial, appellant presented a "selfdefense by mistake" defense. He maintained that he was a concert promoter from Jamaica who believed that he was defending himself against rival concert promoters with whom he had previous altercations.
Appellant testified that prior to the date of the shooting, his wife told him that she had discovered two men breaking into their apartment. She believed that they were part of the rival promotion group because they took promotional materials and were looking for appellant. According to appellant, his wife told him that she had heard three shots fired after the men left. Appellant also testified that his wife had been crying and hysterical. The incident was not reported by appellant's wife, but instead was reported by a neighbor who called 911 after hearing shots. According to the police officer who responded to the call, appellant's wife was very calm when he spoke with her about the incident and wanted to know why the police were there. The officer further testified that Ms. Abraham explained the reported loud noise as coming from a broken plate in the kitchen area.
Appellant raises five points on appeal. He contends first, that attempted second degree murder is not a crime in Florida; second, the trial court abused its discretion when it permitted the State to cross-examine him regarding his wife's unavailability as a witness and to comment on same; third, the trial court abused its discretion when it overruled his objections and motion for mistrial based on the State's questions to certain witnesses and its closing remarks; fourth, the guilty verdicts in counts one and two (attempted second degree murder) and the not guilty verdict on count three (felony causing bodily injury) are "truly inconsistent" and, therefore, counts one and two must be dismissed or reduced; finally, the attempted second degree murder convictions were improperly scored as level ten offenses.
Appellant's first argument that the crime of second degree murder does not exist in Florida is without merit. See Brown v. State, 790 So.2d 389 (Fla.2000). We note that Brown had not issued at the time appellant filed his Initial Brief on Appeal.
In his second point, appellant contends that the trial court erred when it allowed the State to cross-examine him regarding his failure to call his wife, Ingrid Abraham, as a witness at trial, and to argue this point to the jury in closing *397 argument. He argues that Ms. Abraham was equally unavailable to the defense as she was to the State, because she was somewhere in Jamaica and he did not know where she was.
In Jackson v. State, 575 So.2d 181 (Fla. 1991), the supreme court explained:
It is well settled that due process requires the state to prove every element of a crime beyond a reasonable doubt, and that a defendant has no obligation to present witnesses. Accordingly, the state cannot comment on a defendant's failure to produce evidence to refute an element of the crime, because doing so could erroneously lead the jury to believe that the defendant carried the burden of introducing evidence. However, this Court has applied a narrow exception to allow comment when the defendant voluntarily assumes some burden of proof by asserting the defenses of alibi, self-defense, and defense of others, relying on facts that could be elicited only from a witness who is not equally available to the state. A witness is not equally available when there is a special relationship between the defendant and the witness.

Id. at 188 (footnote and citations omitted) (emphasis supplied).
Later, in Lawyer v. State, 627 So.2d 564 (Fla. 4th DCA 1993), this court based on Jackson held that:
[T]he prosecution can comment on a defendant's failure to produce a witness only if: (1) the defendant puts on evidence of defenses such as alibi or self defense which reflects the existence of a witness who could give relevant testimony and, (2) that witness has a special relationship with the defendant.
Lawyer, 627 So.2d at 567 (emphasis supplied).
In Hall v. State, 470 So.2d 796 (Fla. 4th DCA 1985), this court explained that the term "available" as used in this context

does not refer either to geographical proximity or to the physical or mental capacity of the witness to testify. It has reference, rather, to one party's superior knowledge of the existence and identity and the expected testimony of the witness.... [T]he wife, girlfriend or longtime acquaintance of a party ordinarily will be considered to be available as a witness for that party.

Id. at 798 (emphasis supplied).
Here, appellant relied on self-defense as the justification for his shooting of the two unarmed security guards and, unquestionably, he has a special relationship with Ms. Abraham. In addition to appellant referring to Ms. Abraham as his wife, the record shows that they have a child together. When considered in conjunction with other evidence that Ms. Abraham was present for the entire incident at Sears, accompanied appellant to Philadelphia and New York, returned with him to South Florida and continued to contact him while he was incarcerated, the trial court did not abuse its discretion when it determined that appellant's wife was not equally unavailable to both appellant and the State. Therefore, we hold that the trial court did not err when it permitted the State to cross-examine appellant and to comment on his failure to call Ms. Abraham as a witness in support of his "mistaken self defense."
Appellant also argues that the trial court abused its discretion by permitting the State to show him Ms. Abraham's out of court transcribed statement and to ask him to refresh his recollection by reading the statement. Appellant claims that the State's use of the statement constituted improper impeachment.
The State maintains that it used the statement only to refresh appellant's recollection *398 concerning Ms. Abraham's statements to appellant about the alleged break-in of appellant's apartment. The State misplaces its reliance on section 90.613, Florida Statutes (1997), as support for its argument that the statement could be used to refresh appellant's recollection of Ms. Abraham's statement. The State did not lay a proper predicate for use of the statement by establishing that appellant could not recall what Ms. Abraham had told him. See Claussen v. State Dep't of Transp., 750 So.2d 79 (Fla. 2d DCA 1999). However, because the content of Ms. Abraham's statement was not read to the jury or admitted into evidence, we hold that in the context in which it was used, the use of the statement was harmless error.
In his third point on appeal, appellant argues that the trial court erred when it overruled his objections to the prosecutor's questioning of witnesses and to the comments made by the prosecutor during closing argument. He also argues that the trial court erred in denying his motion for mistrial.
During the cross-examination of Mr. Windes, appellant implied that Mr. Windes had failed to make the same statement to police that he later made to defense counsel, allegedly because Windes had been improperly influenced by a conversation that he had with another witness, Mr. North. We hold that the trial court properly permitted the State to use Windes' deposition during its redirect of Windes in order to rebut the implication that Windes' testimony was the product "of improper influence, motive or recent fabrication." See Cardali v. State, 701 So.2d 1241 (Fla. 3d DCA 1997); § 90.801(2)(b), Fla. Stat. (1997).
Appellant next argues that the prosecutor improperly bolstered the testimony of Fred North, Frederick Shots and Roosevelt Reid by playing the video tapes maintained by Sears during their testimony. "In order to preserve an issue for appeal, counsel must preserve the issue by making a specific objection to the admission of evidence on the same grounds as raised on appeal." Tillman v. State, 471 So.2d 32, 35 (Fla.1985). Appellant made a "continuing objection" to the use of the videotape during North's testimony only. The State correctly points out appellant did not preserve the issue of the playing of the video tape during Shots' and Reid's testimony. However, for the reasons which we will discuss we conclude that the playing of the video tape during eye witness North's testimony and during the testimony of Shots and Reid did not constitute a violation of the best evidence rule, and did not amount to improper bolstering of these witnesses' testimony.
Section 90.952, Florida Statutes (1997), provides that "[e]xcept as otherwise provided by statute, an original writing, recording, or photograph is required in order to prove the contents of the writing, recording, or photograph." In Gulf Life Insurance Co. v. Stossel, 131 Fla. 127, 179 So. 163 (1938), the supreme court held that when films are authenticated and shown to be a correct representation of the subject, sound and movement, they are to be admitted under the same rules as photographs. Furthermore, this court noted in Harris v. State, 755 So.2d 766 (Fla. 4th DCA 2000)(quoting Ehrhardt, Florida Evidence (1995 Ed.)), that "[p]hotographs are commonly used to explain the testimony of the witness." Id. at 767. Here, the videotape was a compilation of the four videotapes recorded by Sears, by different cameras set in multiple locations. The finished product, as edited, resulted in portions of the events being shown in slow motion or repeated. As noted by the trial court, this also made the time counter reflected on the left side of the frames *399 confusing. Under the circumstances, the videotape did not constitute "the best evidence." We therefore hold that there was no violation of section 90.952 in allowing North to testify with the assistance of portions of the videotape, or that in allowing him to explain to the jury what they were seeing constituted improper bolstering. We also note that the trial court gave appellant's proposed limiting instruction to the jury concerning the witness' explanation of the events on the tape.
Appellant has failed to demonstrate reversible error in his argument that during closing argument the State improperly bolstered Roosevelt Reid's credibility and that the State improperly argued facts not in evidence. The State's closing remarks were supported by the record, made in fair response to the comments made by appellant's counsel during trial, or constituted harmless error. See Pino v. State, 776 So.2d 1081 (Fla. 3d DCA 2001); Jackson v. State, 703 So.2d 515 (Fla. 3d DCA 1997); see also Reyes v. State, 700 So.2d 458, 461 (Fla. 4th DCA 1997); Craig v. State, 510 So.2d 857 (Fla.1987).
In his fourth point, appellant contends that the guilty verdicts on Counts I and II, attempted second degree murder of Windes and Woods, are inconsistent with the verdict of not guilty on the charge of felony with bodily injury. He claims that because the jury acquitted him on the underlying charge of robbery/theft,[2] the jury necessarily concluded that he did not have the intent to steal and, therefore, it could not find him guilty of attempted second degree murder of the security guards. He maintains that the guilty verdicts on the charges of attempted second degree murder constitute "true" inconsistent verdicts. In State v. Powell, 674 So.2d 731 (Fla.1996), the supreme court stated:
As a general rule, inconsistent jury verdicts are permitted in Florida....
This Court has recognized only one exception to the general rule allowing inconsistent verdicts. This exception, referred to as the "true" inconsistent verdict exception, comes into play when verdicts against one defendant on legally interlocking charges are truly inconsistent. As Justice Anstead explained when writing for the Fourth District Court of Appeal in Gonzalez[ v. State, 440 So.2d 514 (Fla. 4th DCA 1983)], true inconsistent verdicts are "those in which an acquittal on one count negates a necessary element for conviction on another count." 440 So.2d at 515. For example, this Court has required consistent verdicts when
the underlying felony was a part of the crime chargedwithout the underlying felony the charge could not stand. The jury is, in all cases, required to return consistent verdicts as to the guilt of an individual on interlocking charges.

Eaton, 438 So.2d at 823....
Id. at 732-33 (citations omitted). In this case, the charges of felony with bodily injury and the two counts of attempted second degree murder were not interlocking charges. The record contains separate and independent evidence from which the jury could have found appellant guilty of the attempted second degree murders of Windes and Woods without a finding of guilty on the charge of felony with bodily injury. We, therefore, hold that appellant has failed to demonstrate that the verdicts *400 in this case were "true" inconsistent verdicts.
In his final point, appellant contends that the trial court erred when it scored his attempted second degree murder with a firearm convictions as level ten offenses. We agree. Prior to the enactment of chapter 95-184, section 14, Laws of Florida, at 1703-04, section 777.04(4)(a), Florida Statutes (1993), provided that the severity level of second degree murder was dropped by two levels for an attempt. Section 95-184 changed the law to require that one level be dropped for an attempt. However, in Heggs v. State, 759 So.2d 620 (Fla.2000), the supreme court held that chapter 95-184 violated the single subject rule and was thus invalid with respect to crimes committed between October 1, 1995 and May 24, 1997. Trapp v. State, 760 So.2d 924, 928 (Fla.2000). Since appellant committed the charged crimes on April 30, 1997, the amended version of the statute, which would have reduced appellant's offense by only one level for an attempt, does not apply. Thus, appellant's attempted second degree murder offenses should have been scored as level eight offenses. See Richman v. State, 793 So.2d 1072 (Fla. 3d DCA 2001). The one level increases due to appellant's use of a firearm are also inapplicable. Id.; see also Williams v. State, 784 So.2d 524 (Fla. 4th DCA 2001).
Accordingly, we affirm appellant's convictions, but reverse his sentences on the attempted second degree murder convictions and remand for further proceedings consistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
TAYLOR, J., and OWEN, WILLIAM C., Jr., Senior Judge, concur.
NOTES
[1] The record contains conflicting testimony concerning whether appellant's companion, Ingrid Abraham, was his wife or his girl-friend. Appellant referred to Ms. Abraham as his wife, but Roosevelt Reid, his business partner, testified that she was appellant's girl-friend.
[2] As charged, the felony (robbery) with bodily injury requires proof that there was a taking of money or other property which might be the subject of larceny from the victims, with intent to permanently or temporarily deprive them of that property, when in the course thereof, there was use of force, violence, assault, or putting in fear, with bodily injury. See § 812.13, Fla. Stat. (1997).